**Luis A. GIUSTI NEGRON, Plaintiff,**

**v.**

**SCOTIABANK DE PUERTO RICO, etc., et al., Defendants.**

**No. CIV. 01–2022(JAF).**

United States District Court,
D. Puerto Rico.

March 28, 2003.

William Nadal–Colon, Ponce, for Luis A. Giusti–Negron, plaintiff.

Luis F. Antonetti–Zequeira, Hector J. Perez–Rivera, Goldman Antonetti & Cordova, San Juan, for Scotiabank de Puerto Rico, defendant.

### *OPINION AND ORDER*

FUSTE, District Judge.

Plaintiff, Luis A. Giusti Negrón ("Giusti"), filed the present complaint against Defendant Scotiabank de Puerto Rico ("Scotiabank") in the Superior Court of Ponce, Puerto Rico, alleging violations of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 (1994 & Supp. 2002) ("ADEA"); Law No. 100 of Puerto Rico's Civil Code, 29 L.P.R.A. §§ 146–151 (1995 & Supp.1998) ("Law 100"); and Law No. 80, of May 30, 1976, 29 L.P.R.A. §§ 185(a)–185(m) (1995) ("Law 80"). *Docket Document No. 1.* Defendant Scotiabank petitioned to remove the case to federal court. *Id.*

Defendant Scotiabank moves for summary judgment, *Docket Document No. 3*, and Plaintiff Giusti opposes the motion, *Docket Document No. 6*.

## I.

### Factual and Procedural Synopsis

Unless otherwise indicated, we derive the following factual summary from the proposed statement of admitted facts in the pretrial order, the statement of uncontested facts submitted by Defendant Scotiabank in its motion for summary judgment, and the statement of facts submitted by Plaintiff Giusti in his opposition. *Docket Document Nos. 3, 5, 6.*

On January 16, 1974, Plaintiff Giusti began working as a teller for Banco Mercantil. Plaintiff Giusti became an employee of Defendant Scotiabank on May 1, 1975, when Defendant Scotiabank acquired Banco Mercantil. He was terminated 24 years later, on June 24, 1999, while working as the Operations Officer for the Santa Maria branch of Defendant Scotiabank in Ponce, Puerto Rico.

On December 4, 1989, Defendant Scotiabank reprimanded Plaintiff Giusti for receiving a personal loan from a customer.

In 1998, Defendant Scotiabank began an employee survey to evaluate human resources management practices and to obtain information about its employees' development, supervision, and communication with management. As part of the survey, a representative of Defendant Scotiabank's Human Resources Department, Celia M. Lectora, interviewed the staff at the Santa Maria branch in May 1999.

During the survey of the Santa Maria branch, Lectora determined that Plaintiff Giusti had been involved in various performance and behavioral incidents. As a result of Lectora's report regarding the alleged transgressions, Defendant Scotiabank began an investigation to determine whether Plaintiff Giusti had violated company policy by soliciting, receiving, and accepting loans from an employee under his supervision, Carlos L. De Leon.

Plaintiff Giusti and De Leon provided written statements to assist in the investigation. Pursuant to the investigation, Defendant Scotiabank determined that Plaintiff Giusti had solicited, received, and accepted money from De Leon on several occasions since 1994. At the time of the investigation, De Leon stated that Plaintiff Giusti still owed him $125 from the most recent loan. Plaintiff Giusti had supervised De Leon since 1993, and was in charge of evaluating De Leon's performance.

On June 24, 1999, Defendant Scotiabank's Senior Vice–President of Retail and Commercial Banking, Brian W. Brady, terminated Plaintiff Giusti's employment. Brady told Plaintiff Giusti that he was being fired because he had solicited, received, and accepted money from an employee under his supervision in contravention of company policy. Defendant Scotiabank maintains that this was the only reason why it dismissed Plaintiff Giusti.

Plaintiff Giusti avers, however, that the he was actually fired because of his age. On June 11, 2001, Plaintiff Giusti filed the present complaint against Defendant Scotiabank in the Superior Court of Ponce, Puerto Rico alleging age discrimination in violation of the ADEA, Law 100, and Law 80. *Docket Document No. 1.* On July 30, 2001, Defendant Scotiabank petitioned to remove the case to the federal district court in Puerto Rico based on federal question jurisdiction, 28 U.S.C. § 1331. *Id.*

On February 21, 2002, Defendant Scotiabank moved for summary judgment as to

Plaintiff Giusti's claims under the ADEA, Law 100, and Law 80. *Docket Document No. 3.* Plaintiff Giusti opposed the motion on March 25, 2002. *Docket Document No. 6.* Defendant Scotiabank tendered a reply on April 10, 2002.

## II.

### *Motion for Summary Judgment Standard under Rule 56(c)*

The standard for summary judgment is straightforward and well-established. A district court should grant a motion for summary judgment "if the pleadings, depositions, and answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see Lipsett v. Univ. of P.R.*, 864 F.2d 881, 894 (1st Cir.1988). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law," and "genuine" if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The burden of establishing the nonexistence of a genuine issue as to a material fact is on the moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden has two components: (1) an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and (2) an ultimate burden of persuasion, which always remains on the moving party. *See id.* In other words, "[t]he party moving for summary judgment ... bears the initial burden of demonstrating that there are no genuine issues of material fact for trial." *Hinchey v. NYNEX Corp.*, 144 F.3d 134, 140 (1st Cir.1998). This burden "may be discharged by showing that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. After such a showing, the "burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor." *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir.1997) (citing *Celotex*, 477 U.S. at 322–25, 106 S.Ct. 2548).

Although the ultimate burden of persuasion remains on the moving party and the court should draw all reasonable inferences in favor of the nonmoving party, the nonmoving party will not defeat a properly supported motion for summary judgment by merely underscoring the "existence of some alleged factual dispute between the parties"; the requirement is that there be a genuine issue of material fact. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505; *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir.1993). In addition, "factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Under Rule 56(e) of the Federal Rules of Civil Procedure, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see also Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Summary judgment exists to "pierce the boilerplate of the pleadings," *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir.1992), and "determine whether a trial actually is necessary." *Vega–Rodriguez v. P.R. Tel. Co.*, 110 F.3d 174, 178 (1st Cir.1997).

## III.

### *Analysis*

### A. *ADEA*

Defendant Scotiabank moves to dismiss Plaintiff Giusti's ADEA claim on the

grounds that Plaintiff Giusti has not established a prima facie case nor proffered sufficient evidence to establish that its decision to fire Plaintiff Giusti was pretext for age discrimination. *Docket Document No. 3.*

### 1. Burden-shifting Framework

The ADEA provides that it is unlawful for an employer to discharge any individual or otherwise discriminate against him on the basis of his age.[1] 29 U.S.C. § 623(a)(1). A plaintiff can utilize direct evidence to demonstrate that a defendant discriminated against him. *See Jackson v. Harvard Univ.,* 900 F.2d 464, 467 (1st Cir.1990) ("Direct evidence is evidence which, in and of itself, shows discriminatory animus."); *see also Vesprini v. Shaw Contact Flooring Servs., Inc.,* 315 F.3d 37, 41 (1st Cir.2002).

Where there is no direct evidence or "smoking gun" demonstrating that the employer's bias against his employee's age motivated his actions, the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), provides the legal framework with which to analyze the issue.[2] *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 505–07, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Smith v. F.W. Morse & Co.,* 76 F.3d 413, 420 (1st Cir.1996) (stating that "[a]bsent the evidentiary equivalent of a 'smoking gun,' the plaintiff must attempt to prove her case by resort to a burden-shifting framework.").

Here, there is no direct evidence or a "smoking gun" which demonstrates Defen-

dant Scotiabank's alleged discriminatory animus against Plaintiff Giusti. Therefore, we consider the multi-factor test established by the Supreme Court in *McDonnell Douglas.*

The *McDonnell Douglas* framework, as applied in the context of the ADEA, requires that a plaintiff establish a prima facie case by demonstrating:

> (1) that he was at least forty years old when he and his employer parted company; (2) that his job performance met the employer's legitimate expectations; (3) that he lost his position through an adverse employment action attributable to the employer (typically, a firing); and (4) that the employer had a continuing need for the services that he had been rendering.

*Suarez v. Pueblo Int'l, Inc.,* 229 F.3d 49, 53 (1st Cir.2000).

Once the plaintiff establishes a prima facie case, there is a presumption that the employer unlawfully discriminated against him. *Gonzalez v. El Dia, Inc.,* 304 F.3d 63, 68–69 (1st Cir.2002); *Vega v. Kodak Caribbean, Ltd.,* 3 F.3d 476, 478 (1st Cir. 1993).

The burden of production then shifts to the employer-defendant who must rebut the inference of discrimination by articulating some legitimate, non-discriminatory reason for the adverse employment action. *Dominguez–Cruz v. Suttle Caribe, Inc.,* 202 F.3d 424, 430 (1st Cir.2000).

If the employer meets this burden, the inference of unlawful discrimination is dis-

---

1. The ADEA provides, in relevant part, that "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

2. "Since many of the relevant legal standards applicable in employment-discrimination cases arising under the ADEA, the ADA, and Title VII are closely comparable, we cite to them as appropriate." *Gonzalez v. El Dia, Inc.,* 304 F.3d 63, 68 (1st Cir.2002) (internal citation omitted).

pelled, and the burden shifts to the plaintiff to show that the employer's alleged justification is a mere pretext for discrimination. *Id.; Mesnick v. Gen. Elec. Co.,* 950 F.2d 816, 823 (1st Cir.1991). At this stage, the plaintiff must produce evidence beyond the mere assertion that the alleged justification is implausible and show that the employer's discriminatory animus actually motivated the adverse employment action. *See Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993); *Mesnick,* 950 F.2d at 825. Throughout this analysis, the plaintiff maintains the burden of proving that she would not have suffered the adverse employment action but for her membership in a protected class. *See Freeman v. Package Mach. Co.,* 865 F.2d 1331, 1335 (1st Cir.1988). Thus, federal law "does not stop a company from discharging an employee for any reason (fair or unfair) or for no reason, so long as the decision to fire does not stem from the person's age." *Id.* at 1341.

### 2. *Prima Facie Case*

Defendant Scotiabank intimates that Plaintiff Giusti has not established a prima facie case. However, Defendant Scotiabank has not adumbrated any specific challenge to the elements of Plaintiff Giusti's prima facie case. Rather, Defendant Scotiabank appears to accept that at the time Plaintiff Giusti was fired, he was over forty years of age, was at the very least an average employee, and was fired from a position that Defendant Scotiabank did not subsequently eliminate. *Docket Document No. 3, Exh. 1.* Like Defendant Scotiabank, we assume that Plaintiff Giusti has established a prima facie case of age discrimination.

### 3. *Legitimate, Non-discriminatory Reason*

■ Since Defendant Scotiabank has not proffered a sufficient challenge to

Plaintiff Giusti's prima facie case, the burden of production shifts to Defendant Scotiabank and we consider whether it has articulated a legitimate, non-discriminatory reason for firing Plaintiff Giusti. *Dominguez–Cruz,* 202 F.3d at 430.

Defendant Scotiabank proffers evidence that it fired Plaintiff Giusti because he had been soliciting loans from an employee under his supervision, which violated company policy. *Docket Document No. 3.* Plaintiff Giusti agrees that this was the reason given for his termination, but claims he was uninformed about the implications of his conduct and that he never received an English language copy of Defendant Scotiabank's Guidelines for Business Conduct. *Docket Document No. 6.* He asseverates that he merely received an abridged Spanish language version of the Guidelines. *Id.*

To satisfy its burden of production, Defendant Scotiabank does not need to show that Plaintiff Giusti knew that borrowing money from an employee was cause for termination. Rather, Defendant Scotiabank must proffer evidence indicating that it had a legitimate, non-discriminatory reason to terminate Plaintiff Giusti. *Cf. Marcano–Rivera v. Pueblo Int'l, Inc.,* 232 F.3d 245, 252 (1st Cir.2000).

Here, Defendant Scotiabank has offered competent evidence in support of its position that it fired Plaintiff Giusti for violating company policy, and we find that Defendant Scotiabank has sustained its burden of producing a legitimate reason for terminating Plaintiff Giusti. *See St. Mary's Honor Ctr.,* 509 U.S. at 509, 113 S.Ct. 2742 ("By producing evidence (whether ultimately persuasive or not) of nondiscriminatory reasons, petitioners sustained their burden of production."). Therefore, we find that Defendant Scotia-

bank has produced sufficient evidence to rebut the presumption of intentional discrimination which Plaintiff Giusti's prima facie case generated. *See Byrd v. Ronayne,* 61 F.3d 1026, 1031 (1st Cir.1995) (finding that employer's proffers of employee's failure to perform adequately sufficed to displace prima facie presumption in Title VII sexual discrimination case).

### 4. *Pretext*

Since Defendant Scotiabank have met its burden of production, the burden again shifts to Plaintiff Giusti, who must "present sufficient evidence to show both that the employer's articulated reason[s] ... [are] a pretext and that the true reason [for the adverse employment action] is discriminatory." *Thomas v. Eastman Kodak Co.,* 183 F.3d 38, 56 (1st Cir.1999); *Ruiz v. Posadas de San Juan Assocs.,* 124 F.3d 243, 248 (1st Cir.1997).

At this stage of the analysis, we determine whether Plaintiff Giusti's proffered evidence, together with all reasonable inferences drawn in his favor, raise a genuine issue of material fact as to whether the employer's decision was motivated by age discrimination. *Straughn v. Delta Air Lines, Inc.,* 250 F.3d 23, 34 (1st Cir.2001). "Conclusory allegations, improbable inferences, and unsupported speculation" will not defeat a motion for summary judgment. *See Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir. 1990).

Here, Plaintiff Giusti asseverates that Defendant Scotiabank's decision to fire him was discriminatory. To substantiate this position, Plaintiff Giusti claims that it was inappropriate to fire an employee for soliciting and receiving loans from another employee. Plaintiff Giusti also asserts that the atmosphere at Defendant Scotiabank was discriminatory, and that a co-worker

made discriminatory comments to him. Finally, Plaintiff Giusti avers that he was replaced by a younger individual. We consider each of these proffers to determine whether Plaintiff Giusti's evidence creates a genuine issue of material fact as to Defendant Scotiabank's motivation for the termination.

### a. *Validity of Proffered Non-discriminatory Reason*

■ After an employer has produced a lawful reason for the adverse employment action, the presumption of discrimination is dispelled and a plaintiff must discredit the employer's proffered reasons for the termination. *Menzel v. W. Auto Supply Co.,* 848 F.2d 327, 329 (1st Cir.1988). As such, a plaintiff may establish pretext by demonstrating " 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons' such that a factfinder could 'infer that the employer did not act for the asserted non-discriminatory reasons.' " *Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 56 (1st Cir.2000) (quoting *Hodgens v. Gen. Dynamics Corp.,* 144 F.3d 151, 168 (1st Cir. 1998)). "The reasonableness of the employer's reasons may of course be probative of whether they are pretexts. The more idiosyncratic or questionable the employer's reason, the easier it will be to expose it as pretext." *Loeb v. Textron,* 600 F.2d 1003, 1012 n. 6 (1st Cir.1979); *see also Resare v. Raytheon Co.,* 981 F.2d 32, 42 (1st Cir.1992).

However, Plaintiff Giusti needs to "show more than that his employer miscalculated in deciding that he had outlived his corporate usefulness: good-faith errors in an employer's business judgment are not the stuff of ADEA transgressions." *Freeman,* 865 F.2d at 1341; *see also Gonzalez,* 304 F.3d at 69 ("[Federal courts] do 'not sit as

a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, [the ADEA does] not interfere.'") (citations omitted).

Plaintiff Giusti suggests that Defendant Scotiabank should not have fired him because it failed to inform him that it was against company policy to borrow money from an employee under his supervision. There is certainly a dispute in the record as to whether Plaintiff Giusti knew about the particular company policy at issue. However, whether Plaintiff Giusti knew about the policy is not dispositive. The issue is whether the reason offered for Plaintiff Giusti's termination was manifestly unsupported *and* masked an ageist intent. *Ruiz*, 124 F.3d at 248–49. Plaintiff Giusti has not made this showing. Plaintiff does not deny that he took personal loans from an employee under his supervision. Furthermore, Plaintiff does not dispute that Defendant Scotiabank had a policy against these types of personal loans, nor claimed selective enforcement of the policy. Moreover, Plaintiff has not provided any evidence that he was dismissed because of age-based animus. Therefore, we decline to find that Plaintiff Giusti's alleged ignorance about a particular company policy immunized him from dismissal.

### b. *Discriminatory Comments*

 Discriminatory comments may be probative of pretext if a plaintiff can "show that discriminatory comments were made by the key decisionmaker or those in a position to influence the decisionmaker." *Santiago–Ramos*, 217 F.3d at 55 (internal citations omitted). " '[S]tray workplace remarks,' as well as statements made either by nondecisionmakers or by decisionmakers not involved in the decisional process, normally are insufficient, standing alone, to establish either pretext or the requisite discriminatory animus." *See Gonzalez*, 304 F.3d at 69.

Here, Plaintiff Giusti testifies that Aracelis Pérez made comments about Plaintiff Giusti's gray hair and beard, and told him that he was a cradle snatcher for marrying a younger woman. For purposes of summary judgment, we do not weigh the credibility of witnesses, and must assume that these comments were made as stated. *Santiago–Ramos*, 217 F.3d at 55 (internal citations omitted). However, Plaintiff Giusti has not identified the context of the alleged comments nor indicated whether they were made at a time proximate to Plaintiff Giusti's dismissal. These factual uncertainties circumscribe the probative effect of the comments. *See Gonzalez*, 304 F.3d at 70 (internal citations omitted).

Furthermore, the parties agree that Pérez is not Giusti's supervisor, and that she had no direct role in his firing. Nonetheless, Plaintiff Giusti maintains that Pérez influenced the decision to terminate his employment. In an affidavit dated March 22, 2002, Plaintiff Giusti attests that the Pérez was friends with Lectora, and that Lectora was the Human Resources representative who performed the employee survey and apparently uncovered that Plaintiff Giusti was receiving loans from another employee. Plaintiff Giusti claims that the two women called each other and had lunch together while Lectora was conducting the employee survey. Plaintiff Giusti also claims that Lectora mentioned the "war" between Pérez and Plaintiff in her report on the employee survey, and identified Plaintiff as the aggressor in their conflict.[3]

---

**3.** Plaintiff Giusti does not clarify whether this

"war" refers to a general animosity between

Plaintiff Giusti's reasoning shows, at most, that Pérez was able to influence the way Lectora framed the conflict between Pérez and Plaintiff in her report. Even if a jury were to find that Pérez influenced Lectora's perception of the conflict, that is not enough to show that Pérez had any role in bringing about Plaintiff's dismissal. Furthermore, Plaintiff Giusti has not established any connection between Lectora's understanding of Plaintiff Giusti's relationship with Pérez and Defendant Scotiabank's decision to investigate Plaintiff Giusti's relationship with De Leon. The record before us does not support a finding that the investigation was, in any way, related to Plaintiff Giusti's conflict with Pérez. As such, we find that Plaintiff Giusti has not shown that Pérez's alleged bias induced Defendant Scotiabank to investigate Plaintiff Giusti for an unrelated violation of company policy or that she influenced Vice President Brady's determination that Plaintiff Giusti's infraction was sufficient grounds for dismissal. Plaintiff Giusti's inferences about Pérez's bias are too attenuated to support a finding that Pérez's behavior caused or influenced the ultimate decision to terminate him. *Cf. Medina–Muñoz*, 896 F.2d at 9–10 (finding that it was "too large a leap" to attribute an employee's purportedly discriminatory report to the management).

## c. *Discriminatory Atmosphere*

■ "[E]vidence of a discriminatory 'atmosphere' may sometimes be relevant to showing the corporate state-of-mind at the time of the termination" because the evidence may be probative of "the influences behind the actions taken with respect to the individual plaintiff." *Cummings v.*

*Standard Register Co.*, 265 F.3d 56, 63 (1st Cir.2001) (internal citations omitted).

Plaintiff Giusti attests that Scotiabank was plagued with a discriminatory atmosphere. *Docket Document No. 6*. In support of his position that the atmosphere at Defendant Scotiabank was discriminatory, Plaintiff Giusti proffers his own affidavit testimony. In his affidavit, Plaintiff Giusti attests, "Scotiabank's decision making officials had a corporate state-of-mind and a discriminatory atmosphere against all the 'old employees' they originally received" when they acquired Banco Mercantil. *Docket Document No. 6*. Within the context of the affidavit, the reference to the old employees of Banco Mercantil seems to allude to the former employees of Banco Mercantil, not those employees who are within the protected class.

Even assuming that his comment refers to age, the statement merely reiterates Plaintiff Giusti's legal conclusion that there was a discriminatory atmosphere. Plaintiff fails to offer evidence that substantiates his allegations that such an atmosphere existed. The conclusory affidavit statement, alone, is insufficient to support a finding of discriminatory atmosphere. *See Santiago–Ramos*, 217 F.3d at 53 ("To the extent that affidavits submitted in opposition to a motion for summary judgment merely reiterate allegations made in the complaint, without providing specific factual information made on the basis of personal knowledge, they are insufficient."); *Cadle Co. v. Hayes*, 116 F.3d 957, 961 n. 5 (1st Cir.1997) (finding that an affidavit did not contain sufficient specificity to block summary judgment). Since Plaintiff Giusti has not produced any factual details about the alleged discriminatory atmosphere at Defendant Scotiabank, we

---

the two co-workers or whether it simply refers to Pérez's alleged discriminatory comments about Plaintiff's age.

find that Plaintiff has not met his *McDonnell Douglas* burden.

### d. *Replacement by a Younger Individual*

■ Replacement of a plaintiff by an individual outside the protected class may constitute circumstantial evidence of age discrimination. *Mesnick*, 950 F.2d at 824.

Here, Plaintiff Giusti testifies that he was replaced by a younger individual, but offers no factual details about his replacement's age or whether his replacement was outside the protected class. As such, we find that Plaintiff Giusti's unsupported allegation that he was replaced by a younger individual is not enough to overcome Defendant Scotiabank's motion for summary judgment. *Cadle Co.*, 116 F.3d at 961.

Furthermore, replacement by a younger person, is not enough in itself to sustain Plaintiff Giusti's burden of demonstrating pretext by a preponderance of the evidence. *See Gonzalez Lartigue v. West*, 124 F.Supp.2d 125, 133–34 (D.P.R.2000); *Escobar v. Office of the Disabled Pers. Investigating Official*, 797 F.Supp. 70, 76 (D.P.R.1992).

In sum, Plaintiff Giusti's evidence, when viewed together, does not generate a question of fact as to the motivation for his termination. Plaintiff Giusti has not shown any internal inconsistencies with Defendant Scotiabank's proffered reason for terminating Plaintiff Giusti, documented any discriminatory comments by a decision maker, established a discriminatory atmosphere within the company, or proffered any other circumstantial evidence of age discrimination. Based on the record before us, we find that summary disposition of Plaintiff Giusti's ADEA claim is appropriate.

### B. *Supplemental Jurisdiction*

Plaintiff Giusti's ADEA claim provided us with federal question jurisdiction over the present matter. Since this Opinion and Order dismisses Plaintiff Giusti's cause of action under the ADEA, we decline to exercise supplemental jurisdiction over Plaintiff Giusti's associated state-law claims against Defendant Scotiabank. *See Rivera v. Murphy*, 979 F.2d 259, 264 (1st Cir.1992) (quoting *Cullen v. Mattaliano*, 690 F.Supp. 93 (D.Mass.1988) ("[I]t is the settled rule in this Circuit that in a non-diversity case, where pendent state claims are joined with a federal cause of action and that the federal cause of action is [dismissed] ... the pendent state claims should be dismissed.")). Accordingly, we dismiss Plaintiff Giusti's Law 80 and Law 100 claims.

### IV.

### *Conclusion*

Plaintiff Giusti has not produced sufficient evidence to support a finding that he experienced age discrimination at the hands of Defendant Scotiabank. Therefore, we DISMISS Plaintiff Giusti's ADEA claim. Since we have dismissed Plaintiff Giusti's federal cause of action, we also dismiss his claims under Puerto Rico law. In accordance with the foregoing, we GRANT Defendant Scotiabank's motion for summary judgment. *Docket Document No. 3.*

**IT IS SO ORDERED.**