Priscilla **RODRIGUEZ–AVILES**, et al., Plaintiff(s)

v.

**BANCO SANTANDER DE PUERTO RICO**, Defendant(s).

Civil No. 04–1370 (JAG).

United States District Court, D. Puerto Rico.

Sept. 8, 2006.

Maria T. Juan–Urrutia, Escanellas & Juan, San Juan, PR, for Plaintiffs.

Pedro A. Buso–Garcia, Fiddler, Gonzalez & Rodriguez, San Juan, PR, for Defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

Pending before the Court is a Motion for Summary Judgment filed by Banco Santander de Puerto Rico (hereinafter "the Bank" or "Santander") on October 3rd, 2005. (Docket No. 15). For the reasons set forth below, the Court **GRANTS** the Motion.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are uncontested. The Court construes the same in the light most favorable to the non-moving party, and grants all reasonable inferences in that party's favor. *Rosenberg v. City of Everett*, 328 F.3d 12, 17 (1st Cir.2003).

Plaintiff, Priscilla Rodriguez–Aviles (hereinafter "plaintiff"), began to work as a teller for Banco Crédito y Ahorro Ponceño on January 10th, 1977, when she was 29 years old. In the year 1978, Santander acquired Banco Crédito y Ahorro Ponceño, and plaintiff retained her position under the new management. Through the years, the plaintiff occupied several positions at the Bank, including teller, Utility Clerk, Operations Official and Operations Assistant Manager. As Operations Official and

Assistant Manager,[1] the plaintiff was required to know the procedures for each type of transaction, know the requirements established by the regulatory agencies, and was in charge of overseeing that the Bank's policies and procedures were complied with by the employees she supervised. Due to her position, the plaintiff was the person designated by the Bank to communicate and take the necessary action to correct operational problems or deviations from policies. (Docket No. 15, exhibit # 2 at ¶ 6). Furthermore, as Operations Official and Assistant Manager, the plaintiff was the custodian of the Bank's Employee and Operations Manual. It is undisputed that plaintiff's performance in each of the positions she held was excellent.

On October 27th, 2003, Johnny Rijos performed an audit at Santander's Plaza Escorial Branch. While at the task, Rijos indicated to the plaintiff that a client's Check System Authorization form was missing from the file.[2] (Docket No. 20 Exhibit # 2 at ¶ 22). The plaintiff then approached Maria Gonzalez, the official who usually opened commercial accounts, but Gonzalez told the plaintiff that Frances Cotto was the person who opened the account at issue. Cotto was questioned by the plaintiff and she explained that she always had the form signed by the client, and that it most probably had been misplaced. *Id.*, at ¶ 23. While Rijos was looking for the missing form, Cotto went to the file cabinet to look for the document.

Cotto then returned with a document and told Rijos that the document had been found in another file. Rijos, in turn, showed Cotto a forged document that he had found in the photocopier. An investigation by the Bank's Security Department concluded that Gonzalez taped a copy of the client's signature to the Check System Authorization form, and then photocopied the document. As a result of the forgery, the document looked as if it had been signed by the client.

On November 5th, 2006, the plaintiff was interviewed by personnel from the Bank's Safety Department. Upon their request, the plaintiff signed the following handwritten statement (hereinafter, "the Statement"):

> I, Priscilla Rodriguez, Operations Assistant manager, declare freely and voluntarily that I was interviewed by Julio Mangual from the Security Department, who informed me about an investigation that is being conducted regarding a Banking Authorization document, investigation that appeared altered at the photocopier [sic]. With regards to that I informed the following, that said account was opened by Frances Cotto and that the client was Francisco Sosa. That in my Parque Escorial Branch they were performing an audit where the auditor, Johnny J. Rios raised evidence from the client Francisco Sosa's file where the Check System verification appeared, but not the banking investiga-

---

1. The plaintiff was promoted to Assistant Manager in 1998, after 20 years of service at the Bank. The plaintiff claims that she was offered the position of Branch Manager, but turned it down because she does not drive motor vehicles and the position entailed duties outside of the office. Nonetheless, plaintiff served as Temporary Manager when needed, and was awarded performance bonuses for holding that position. (Docket No. 20, Exhibit # 2 at ¶ 4).

2. The Check System Authorization form is used to investigate whether a client has had other bank accounts and, if so, whether the client has used them appropriately. In order to conduct a Check System verification, the client is required to sign the Check Authorization form. (Docket No. 15, Exhibit # 2 at ¶¶ 15–16).

tion authorization. I proceeded to communicate to María González that from the account opened by Frances Cotto they pointed to me this incidence. I proceeded to ask Frances Cotto and she indicated that she always filled it out. Subsequently, Maria Gonzalez told me I'm going to solve it and left. I continued working and heard that it got damaged and I hear that she is making and talking about the document. I never saw the document, but I understand that what she was doing in some ways was altering the authorization of the client Francisco Sosa. Subsequently, after Frances Cotto turned in the altered document, Frances tells me that the auditor had the original document that María had made and left at the photocopier. At that time María González said that she destroyed the documents in the ladies room. Subsequently, the auditor Rijos showed me the altered document, as soon as I saw it I told him that it was wrong and that I felt bad. At that time I did not communicate to the auditor who had prepared the document. The next day I communicated to Mr. Felipe Ruiz and Anita de Leon, and to this last one I told her who had done it. It was the next day that I told Anita de Leon what had happened. What I declare here is the truth and by my own word of what happened, that no one forced me to make this declaration. S/Priscilla Rodriguez. (Docket No. 15–2 at ¶ 30).

Rodriguez was notified of her termination through a letter dated November 7th, 2003, signed by Felipe Ruiz, Branch Manager at the Bank's Plaza Escorial branch. The Bank claims that the plaintiff was terminated because of her involvement in the "forged documents incident." Conversely, the plaintiff claims that her termination was due to discrimination because of her age.

## STANDARD OF REVIEW

### 1. Summary Judgment Standard

The court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 states, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); See also Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52. (1st Cir.2000).

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." See Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once a properly supported motion has been presented before the court, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the court's denial of the motion for summary judgment. For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. See Suarez v. Pueblo Int'l, Inc., 229 F.3d 49 (1st Cir. 2000).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine". "Material" means that

a contested fact has the potential to change the outcome of the suit under governing law. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party based on the evidence. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is well settled that "[t]he mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." *Id.* at 252. Therefore, "a party opposing summary judgment must present definite, competent evidence to rebut the motion." *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994).

In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990).

### 2. *ADEA Standard*

■ ADEA makes it unlawful for an employer to discriminate against any individual with respect to his terms and conditions of employment or to adversely affect his status as an employee, because of such individual's age. *See* 29 U.S.C. § 623(a)(1). It is well-settled that to prevail in a wrongful discharge case under the ADEA, plaintiff bears the ultimate "burden of proving that . . . she would not have been fired but for her age" *Vega v. Kodak Caribbean. Ltd.,* 3 F.3d 476, 478 (1st Cir. 1993); *Shorette v. Rite Aid of Maine, Inc.,* 155 F.3d 8, 12 (1st Cir.1998); *Hidalgo v. Overseas Condado Ins. Agencies, Inc.,* 120 F.3d 328, 332 (1st Cir.1997). An employer may take an adverse action for any reason, fair or unfair, so long as the action is not motivated by an age-based discriminatory animus. *Hidalgo,* 120 F.3d at 337.

■ Where, as here, a plaintiff lacks direct evidence of discrimination, Courts apply the burden-shifting framework established by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this framework, the plaintiff must first establish a *prima facie* case of age discrimination by demonstrating that (1) she is within the protected class (over the age of forty); (2) that her job performance was satisfactory and met her employer's legitimate expectations; (3) that she suffered an adverse employment action; and (4) that defendant sought a replacement with roughly equivalent job qualifications, thus revealing a continued need for the same services and skills. *See Pueblo Int'l,* 229 F.3d at 53; *Mesnick v. General Electric Co.,* 950 F.2d 816, 823 (1st Cir.1991); *Flamand v. American Int'l Group, Inc.,* 876 F.Supp. 356, 368 (D.P.R.1994).

Establishing a *prima facie* case generates a rebuttable presumption of discrimination. While the burden of persuasion remains at all times with the plaintiff, the *prima facie* case shifts the burden of production to the employer, who must then articulate a legitimate non-discriminatory reason for the adverse employment action. *See Mesnick,* 950 F.2d at 823. "This entails only a burden of *production,* not a burden of persuasion; the task of proving discrimination remains the claimant's at all times." *Id. (citing Texas Dept. Of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Medina–Munoz,* 896 F.2d at 9)(emphasis added). If the employer meets this limited burden, the presumption vanishes and the plaintiff must adduce sufficient evidence to demonstrate that age was a motivating factor in the challenged employment ac-

tion. *Zapata–Matos v. Reckitt & Coleman, Inc.,* 277 F.3d 40, 45 (1st Cir.2002). To do so, plaintiff must show that the proffered reason is pretextual such that discriminatory animus can be inferred. *Gonzalez v. El Dia, Inc.,* 304 F.3d 63, 69 (1st Cir.2002). "It is not enough for a plaintiff to merely impugn the veracity of the employer's justification, [s]he must 'elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive, age discrimination.' " *Mesnick,* 950 F.2d at 824 (*quoting Medina–Munoz,* 896 F.2d at 9).

## DISCUSSION

The First Circuit has established that evidence of an employee's long history at the business, and his or her rise from a low level to a managerial position, are sufficient to support an inference that the employee's job performance was adequate to meet an employer's needs, even when the evidence did not extend all the way to the time of his discharge. *Mulero–Rodriguez v. Ponte, Inc.,* 98 F.3d 670, 673 (1st Cir.1996). Inasmuch as plaintiff worked for over twenty-seven (27) years at Santander, rising from the lower ranks to a managerial position, and since Santander does not challenge any of the other three requirements, the Court rules that the plaintiff established a *prima facie* case. (Docket No. 15–3, at 11). A presumption of discrimination is thus present, and the Bank must now present a legitimate, non-discriminatory reason for the adverse employment action.

### A. *Legitimate, Non-discriminatory Reason*

Santander offers a legitimate, non-discriminatory reason for discharging the plaintiff: she covered up a serious violation of the Bank's norms and procedures in-volving the forging of a client's signature. (Docket No. 15–3, at 2). Santander claims that, although the plaintiff did not personally forge the document, she did know who had done the forging but did not immediately tell the auditor. Moreover, Santander argues that this situation affected the Bank's good and normal operations, violated the honesty, confidentiality and trust that the Bank expects from its employees, and that it was so severe that "it would have been negligent on the Bank's behalf to wait for Rodriguez to cover up another fraudulent incident to terminate her employment with the Bank." *Id.,* at 14. Finally, Santander argues that the lack of age animus is further buttressed by the fact that all three employees who were involved in the forging incident were discharged, including one who was twenty-six (26) years old at the date of dismissal.

Santander has met its burden of production and the ultimate burden now rests with the plaintiff to prove her discharge was motivated by discriminatory animus.

### B. *Evidence of Discrimination*

Pursuant to the *McDonnell Douglas* framework, the plaintiff must now come forward with sufficient evidence to permit a reasonable fact-finder to conclude that her employer's stated reason for discharge was a pretext for age discrimination. Upon due consideration of the plaintiff's arguments, the Court finds that the plaintiff has not shown a genuine issue as to the reason for her discharge.

First, plaintiff tries to create a material issue by arguing that the facts contained in the Statement provided by her to the Security Department's envoys, and transcribed above, "are contested." Other than this general averment, however, plaintiff does not specify which aspect of the Statement is not true. *See* Docket No. 20–2 at ¶ 32. After reviewing the "Un-

sworn Statement" submitted by the plaintiff with her Response to the Motion to Dismiss, (Docket No. 20–3, Exhibit # 1), the Court must assume that the contested fact is her alleged knowledge of the identity of the person who had forged the document, because the two versions of the facts are otherwise conciliable.

Nevertheless, even assuming that she, indeed, did not know the identity of the forger when she was confronted by the auditor, the Court finds that plaintiff still does not prove discriminatory animus by the Bank. That fact, standing alone, serves to prove that her dismissal was, perhaps, unjustified or unfair. However, the First Circuit has consistently held that "whether a termination decision was wise or done in haste is irrelevant, so long as the decision was not made with discriminatory animus." *Rivera–Aponte v. Restaurant Metropol # 3*, 338 F.3d 9, 11 (1st Cir.2003); *Ruiz v. Posadas de San Juan Associates*, 124 F.3d 243, 248 (1st Cir.1997)(holding that "[plaintiff] must do more than cast doubt on the rationale proffered by the employer, ... the evidence must be of such strength and quality as to permit a reasonable finding that the termination was obviously or manifestly unsupported"); *Hidalgo*, 120 F.3d at 337 ("the ADEA does not stop a company from discharging an employee for any reason (fair or unfair) or for no reason, so long as the decision to fire does not stem from the person's age").

Second, the plaintiff claims that summary judgment is inappropriate because she can muster facts that evince Santander's discriminatory animus. Specifically, plaintiff asserts that Santander, through various of its officials, "started a harassment and discrimination campaign against [the plaintiff] because of her age." (Docket No. 20 at 4). Plaintiff recites the following incidents in support of her contention:

1) In 1998, when plaintiff was transferred to the Plaza Carolina branch of Santander, the Branch Manager told her that "after being old they had fooled her" ("después de vieja te cogieron de pendeja"). (Docket No. 15–2 at ¶ 51). Plaintiff explains that the manager's comment was due to the fact that she had been transferred to a branch were she had to work more hours. *Id.*, at ¶ 52;

2) On July 21st, 2001, plaintiff requested in writing to be considered for a position at the new Santander branch in Plaza Escorial. She was ignored and not given the position. Worse yet, she was transferred to the Carolina Norte branch, one that, according to plaintiff, was not appropriate for a 25–year–experience employee due to its low volume of transactions and cash flow (Docket No. 20, Exhibit # 1 at ¶¶ 8–9);

3) In 2001, at the Carolina Norte Branch, Manager Raquel De Leon told her that "the operations were obsolete," that "everything she did was obsolete," and that the bank wanted "dynamic" people for sales. (Docket No. 15–2 at ¶ 58). Plaintiff attributes similar comments to supervisors Reynaldo Luciano, Hector Velez and Carlos Jimenez. (Docket No. 20–2, at ¶ 13).

4) While at the Plaza Escorial branch, she was constantly told by Felipe Ruiz, Branch Manager, that they both will get fired because the Bank wanted dynamic people with a new mentality to achieve the goals. (Docket No. 20–2 at ¶ 16; Docket No. 15–2 at ¶ 68).

Taking the foregoing allegations as true, the Court finds them insufficient to show discriminatory animus by the Bank. For instance, the "after being old they had fooled her" remark by the Plaza Carolina's Branch Manager, in the context in which it was said, cannot be interpreted as evi-

dence of age discrimination. That remark is commonly used in Puerto Rico to denote that, in spite of a person's better knowledge, he or she is persuaded into something against his or her best interests. In such a context, "old" is used to underscore a person's experience, and is not to be taken as an insult. Besides, the plaintiff fails to explain how the remark, even if taken as pejorative, is connected to her dismissal almost five years later.

The same reasoning applies to the alleged discriminatory animus in the Bank's refusal, in 2001, to accommodate her request to be transferred to the recently opened Plaza Escorial branch. There is nothing in the allegation, as stated by the plaintiff, that would reveal age discrimination in the Bank's decision. In any event, even assuming the contrary, the plaintiff does not elaborate on how that incident is connected to her dismissal two years later.

The Court is also not persuaded by plaintiff's ascribing a discriminatory animus to the remarks regarding the Banks' need for "dynamic people" with "new mentality," and the evaluation of her methods as "obsolete" by various supervisors. The word "dynamic" is simply not a synonym for "young," and "new mentality" is not necessarily equal to a "young person's mentality." At most, those remarks tried to convey the Bank's need for certain traits of character, perspectives and attitudes in its employees, rather than assert a discriminatory predisposition against older people. Also, the use of the word "obsolete" to describe her methods is not necessarily indicative of age discrimination, as even a young person's way of doing things could be considered outdated by some employers. *See Speen v. Crown Clothing Corp.*, 102 F.3d 625, 636 (1st Cir.1996)("[A]mbiguous remarks, tending to suggest animus based on age, are insufficient, standing alone, to prove an employer's discriminatory intent").

Moreover, even assuming that the remarks were indeed ageist, the plaintiff has failed to establish how they are related to the adverse employment action. In fact, only one of the above-referenced incidents occurred at the Plaza Escorial branch. Plaintiff claims that the Branch Manager there, Felipe Ruiz, told her that they *both* will get fired because of the Bank's need for dynamic people. However, the plaintiff does not point to the date on which this comment took place, and does not elaborate on the context in which the remarks were said.[3] Further, the plaintiff does not explain what participation Ruiz had in the *actual decision* to terminate her. She only asserts that the dismissal letter was signed by him which, by itself, is insufficient for the Court to conclude that Ruiz was a decisionmaker in this case. The comment, at most, is a stray ageist remark that the plaintiff is unable to connect to the challenged employment decision. *See Gonzalez v. El Dia, Inc.*, 304 F.3d 63, 69 (1st Cir.2002)(holding that "stray workplace remarks, as well as statements made either by nondecisionmakers or by decisionmakers not involved in the decisional process, normally are insufficient, standing alone, to establish either pretext or the requisite discriminatory animus").

Finally, the plaintiff argues that another similarly situated employee, Lourdes Anca, was allegedly involved in an incident where an employee named Edwin Nieves was terminated for stealing from the Bank after Anca negligently gave him secret passwords. Santander counters that its internal investigation concluded that Nieves had illegally misused the passwords given

---

**3.** The Court notes that Santander also alleges that all incidents that occurred prior to April 11th, 2003, are time-barred. (Docket No. 15–3 at 6).

to him as part of his job as Main Cashier, and that Anca was not involved in any wrongdoing. That is, Santander claims that Anca had no obligation to keep the passwords from Nieves, and thus had incurred in no violation of the Bank's policies.

On this record, the Court must conclude that while plaintiff had a duty to immediately inform the auditor about the forging incident, Anca violated no rule in providing the passwords to Nieves, who, according to the Bank, was entitled to having them anyway. Therefore, Anca's case is distinguishable from the one at bar and does not serve plaintiff's purposes. *See Restaurant Metropol 3*, 338 F.3d at 12 (citing *Rodriguez–Cuervos v. Wal–Mart Stores, Inc.*, 181 F.3d 15, 21 (1st Cir.1999), which held that "a claim of disparate treatment based on comparative evidence must rest on proof that the proposed analogue is similarly situated in all material respects").

In sum, the Court finds that Santander's proffered reason was compelling and well-documented. The plaintiff, on the other hand, simply provides a series of isolated events (both in time and in their relation to each other), which, even if taken as inherently discriminatory, are not enough to convince the Court that age discrimination motivated her dismissal.

### CONCLUSION

For the reasons discussed above, the Court rules that plaintiff has failed to demonstrate sufficient evidence to permit a reasonable fact-finder to conclude that her termination was pretext for age discrimination. Consequently, the Motion for Summary Judgment is **GRANTED**. All claims brought pursuant to the ADEA are dismissed **with prejudice**. The supplemental state law claims are dismissed **without prejudice**. Judgment shall enter accordingly.

IT IS SO ORDERED.