**Julio MORALES–FIGUEROA, et al., Plaintiffs**

v.

**BANCO BILBAO VIZCAYA ARGENTARIA, Defendant.**

**Civil No. 05–1424 (FAB).**

United States District Court, D. Puerto Rico.

April 9, 2007.

Anibal Escanellas–Rivera, Escanellas & Juan, San Juan, PR, for Plaintiff.

Pedro J. Manzano–Yates, Rosa M. Mendez–Santoni, Enrique R. Padro, Fiddler, Gonzalez & Rodriguez, San Juan, PR, for Defendant.

## OPINION AND ORDER

BESOSA, District Judge.

On April 20, 2005, Julio Morales–Figueroa, his wife, Aveda Torres–Cruz and their conjugal partnership filed suit against Banco Bilbao Vizcaya Argentaria ("BBVA") alleging employment discrimination due to his age in violation of the Age Discrimination in Employment Act ("ADEA"), retaliation pursuant Title VII, 42 U.S.C. § 2000e–3(a), as well as supplemental state law claims (Docket No. 1). On April 24, 2005, BBVA moved for summary judgment on plaintiffs' claims (Docket No. 19). On June 14, 2006, Plaintiffs opposed the motion (Docket No. 41). For the reasons discussed below, the Court **GRANTS** BBVA's motion for summary judgment.

## FACTUAL BACKGROUND

Mr. Julio Morales–Figueroa began to work at BBVA as a Messenger in September, 1978.[1] During his tenure at BBVA, he worked as a Messenger in the Bank's Operations Area located in Santurce, Puerto Rico. (*See,* BBVA's Statement of Uncontested Material Facts "SUMF", ¶ 1). His duties as a messenger consisted of the pick-up and delivery of mail, documents, materials, and equipment sent to or sent by BBVA to external entities such as law firms and the Puerto Rico Treasury Department. He was also responsible for delivering any documents or materials to and from the different offices and branches of BBVA. (SUMF, ¶ 2)

---

**1.** Although Mr. Morales–Figueroa expressed in his deposition that he began to work with BBVA in 1978 and that BBVA's Human Resources Official, Manuel A. Frias, stated under penalty of perjury that Morales–Figueroa "worked for BBVA as a Messenger since September 20, 1978", in his Opposition to Defendants' Motion for Summary Judgment, he denied this fact and stated that he began working for BBVA "in or around 1968". (See, Docket No. 27, Exh. 1, p. 11; Docket No. 19, Exh. 4; and, Docket No 32–2, ¶ 3). The Court, however, will disregard any conflicting statement proffered by plaintiff in his opposition. *See, Ramos v. Roman,* 83 F.Supp.2d 233, 247 (D.P.R.2000) ("When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed."). In addition, this fact is immaterial. See, *Giusti–Negron v. Scotiabank de Puerto Rico,* 260 F.Supp.2d 403, 406 (D.P.R.2003) (... "factual disputes that are irrelevant or unnecessary will not be counted.") (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

BBVA employed a total of three (3) messengers, including Morales–Figueroa. The other two (2) messengers were Rafael Reyes and Jesus Santiago–Rosado. (SUMF, ¶ 3) Morales–Figueroa was born on June 19, 1949. (SUMF, ¶ 1) Reyes was born on October 31, 1945. Santiago–Rosado was born on May 17, 1947. (*Id.*). At the time Mr. Morales–Figueroa was terminated, Reyes was 59 years old and Santiago–Rosado was 57 years old.

In order to comply with their responsibilities, the Messengers used two vehicles owned by BBVA. (SUMF, ¶ 4)

Before 2004, the gasoline supply for BBVA's vehicles was provided exclusively by Versalles–Gulf gas station, which BBVA contracted to provide this service. BBVA's messengers bought gasoline at the gas station and signed a receipt for the amount spent. The amount was then charged to BBVA. The receipt signed by each messenger contained the messenger's signature, the amount spent, the service provided or the product sold by the gas station, the date of transaction, and the car's make and license number. BBVA then paid the expenses. (SUMF, ¶ 6 and Plaintiffs' Statement of Contested and Uncontested Facts "PUMF", ¶¶ 11–12)

In 2004, BBVA started confronting services problems with the Versalles–Gulf Station because of inconsistencies in the gasoline supply. Because of that, BBVA sent a letter to all its messengers, Morales–Figueroa, Reyes–Albarran and Santiago–Rosado, informing that they should go instead to the Minillas Gulf Station for the gasoline supply.[2] (SUMF, ¶ 7)

In late 2004, not long after BBVA contracted with Minillas Gulf Station, Bonosio Casellas Bond, Vice–President of BBVA's Operations, held a telephone conversation with the owner of Minillas Gulf Station, Marco Ginorio. (SUMF, ¶ 8) Casellas stated that Ginorio informed him of two situations related to Morales–Figueroa. Specifically, Mr. Ginorio indicated that on one occasion Morales–Figueroa requested Ginorio to prepare and issue a receipt for $10.00 despite the fact that Morales–Figueroa had not purchased gasoline or products for BBVA's vehicle. On another occasion, he further informed, Morales–Figueroa requested Ginorio to prepare and issue a receipt for $15.00 despite the fact that he only bought $10.00 worth of gasoline for BBVA's vehicle. (SUMF, ¶ 8)

After the conversation with Ginorio, Casellas and Jaime Rivera, Morales' immediate supervisor, conducted an investigation and reviewed his record of vehicle expenses. Casellas and Rivera noticed that Morales' receipts were "extremely high when compared to the standard amounts and to the vehicle expenses reported by the other [m]essengers". (SUMF, ¶ 10) Rivera also contacted the owner of Versalles–Gulf Station to obtain information regarding Morales' use of BBVA's account at that specific gas station. The owner of the gas station informed Rivera that Morales–Figueroa bought beers in the gas station's mini market and charged them to BBVA's account. (SUMF, ¶ 11)

Because of the above, Casellas and Rivera met with Manuel A. Frias, BBVA's Human Resources officer to discuss the information obtained from Rivera and Ginorio. (*Id.*)

After the meeting, specifically on December 6, 2004, Casellas, Rivera and Frias held a meeting with Morales–Figueroa to

---

**2.** Among other things, the letter stated "[e]ffective immediately, fuel for mail cars and any kind of additional supplies needed for them, should be carried out at Gasolinera Minillas Gula [sic] Station next to Bonanza restaurant. Invoices from other places will not be accepted unless previously authorized by your supervisor". (Docket No. 27, Exh. VI)

discuss their findings. (SUMF, ¶ 13) During the meeting, Frias informed Morales–Figueroa of the investigation conducted by his supervisors and the BBVA's Human Resources Department with regards to his pattern of excessive car expenses. They also confronted Morales–Figueroa with the charges that appeared in the gas station receipts signed by him to obtain his reaction. (SUMF, ¶ 13) Morales–Figueroa denied the allegations and asserted that one of his supervisors authorized him to buy gasoline for his personal vehicle using BBVA's account. When asked to disclose the supervisor's name, however, Morales–Figueroa expressed that he did not remember it. In addition, although Casellas was in charge of BBVA's operations approximately three (3) years before the December 6, 2004 meeting and Rivera was the messengers' supervisor, Morales–Figueroa stated that none of them authorized the use of gasoline for his personal vehicle. (SUMF, ¶ 14 and Exh. IX) After the meeting, Morales–Figueroa was suspended from employment and salary.

Casellas, Rivera and Frias then met with Reyes and Santiago, BBVA's other messengers. They both stated that the amounts that were reflected in their receipts *were* spent in gasoline for BBVA's vehicles, and that they never bought gasoline for their personal cars with BBVA's account. (SUMF, ¶ 16) They further expressed that they never altered any ticket or receipt for their benefit, and that they were prohibited from using BBVA's account at Versalles–Gulf station for any purpose other that the purchase of gasoline or car maintenance products for BBVA's vehicles. (*Id.*, Exhs. 5 and 6) They further stated they did not have any knowledge of Morales–Figueroa's use of BBVA's account for his personal benefit. (*Id.*) Frias then met with Alfredo Izquierdo, BBVA's Human Resources Manager, to discuss his findings and recommended that Morales–Figueroa be terminated from

his employment. Izquierdo adopted Frias' recommendation and decided to terminate Morales–Figueroa from his employment at BBVA effective on December 13, 2004. (SUMF, ¶ 20) According to Frias, he reached his decision based on (1) Morales' record of vehicle expenses when compared to the records of Reyes and Santiago; (2) the information given by Ginorio to Casellas and the information given by the owner of Versalles Gulf Station to Rivera, which he believed to be totally credible; (3) the interviews he held with Casellas and Rivera; (4) Morales' demeanor, responses and remarks during the December 6, 2004 meeting, when he was interviewed and confronted with the information; (5) the content of the interviews held with Reyes and Santiago (the other 2 messengers) on December 6, 2004; and (6) the high level of credibility that he conferred upon Reyes, Santiago, Rivera, and Casellas. (SUMF, ¶ 18, Exh. II) Frias did not base his recommendation on Morales' age. (SUMF, ¶ 18, Exh. II, ¶ 15)

Mr. Morales–Figueroa was terminated from his position as a messenger, on December 13, 2004. He was 55 years old at that time.

## DISCUSSION

### A. *Summary Judgment Standard*

The court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 states, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *See also Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir.2000).

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once a properly supported motion has been presented, the opposing party has the burden of demonstrating that a trialworthy issue exists that would warrant the court's denial of the motion for summary judgment. For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. *See Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49 (1st Cir.2000).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine". "Material" means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party based on the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. *Id.* at 252, 106 S.Ct. 2505. It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion." *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994).

To assess whether to grant or deny a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990).

**B.** *Age Discrimination in Employment Act*

█ ADEA makes it unlawful for an employer to discriminate against any individual with respect to his terms and conditions of employment or to adversely affect his status as an employee because of such individual's age. *See* 29 U.S.C. § 623(a)(1). Under ADEA, an employer is liable if age was the motivating factor in the employer's decision. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). To prevail in a wrongful discharge case under ADEA, plaintiff bears the ultimate "burden of proving that ... [he] would not have been fired but for h[is] age". *Rodriguez–Aviles v. Banco Santander de Puerto Rico*, 467 F.Supp.2d 148, 152 (D.P.R.2006); *Vega v. Kodak Caribbean, Ltd.*, 3 F.3d 476, 478 (1st Cir.1993); *Shorette v. Rite Aid of Maine, Inc.*, 155 F.3d 8, 12 (1st Cir.1998); *Hidalgo v. Overseas Condado Ins. Agencies, Inc.*, 120 F.3d 328, 332 (1st Cir.1997). An employer may take an adverse action for any reason, **fair or unfair,** so long as the action is not motivated by an age-based discriminatory animus. *Hidalgo*, 120 F.3d at 337 (emphasis added).

As in this case, where a plaintiff lacks direct evidence of discrimination, Courts apply the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this frame-

work, the plaintiff must first establish a *prima facie* case of age discrimination by demonstrating that (1) he is within the protected class (over the age of forty); (2) that his job performance was satisfactory and met his employer's legitimate expectations; (3) that he suffered an adverse employment action; and (4) that defendant sought a replacement with roughly equivalent job qualifications, thus revealing a continued need for the same services and skills. *See Pueblo Int'l,* 229 F.3d at 53; *Mesnick v. General Electric Co.,* 950 F.2d 816, 823 (1st Cir.1991); *Flamand v. American Int'l Group, Inc.,* 876 F.Supp. 356, 368 (D.P.R.1994).

Establishing a *prima facie* case generates a rebuttable presumption of discrimination. While the burden of persuasion remains at all times with the plaintiff, the *prima facie* case shifts the burden of production to the employer, who must then articulate a legitimate non-discriminatory reason for the adverse employment action. *See Mesnick,* 950 F.2d at 823. "This entails only a burden of production, not a burden of persuasion; the task of proving discrimination remains the claimant's at all times." *Id. (citing Texas Dept. Of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Medina–Muñoz,* 896 F.2d at 9)(emphasis added). If the employer meets this limited burden, the presumption vanishes and the plaintiff must adduce sufficient evidence to demonstrate that age was a motivating factor in the challenged employment action. *Zapata–Matos v. Reckitt & Coleman, Inc.,* 277 F.3d 40, 45 (1st Cir.2002). To do so, plaintiff must show that the proffered reason is pretextual such that discriminatory animus can be inferred. *Gonzalez v. El Dia, Inc.,* 304 F.3d 63, 69 (1st Cir.2002). "It is not enough for a plaintiff to merely impugn the veracity of the employer's justification, he must 'elucidate specific facts which would enable a jury to find that the reason given is not

only a sham, but a sham intended to cover up the employer's real motive, age discrimination.'" *Mesnick,* 950 F.2d at 824 *(quoting Medina–Muñoz,* 896 F.2d at 9).

1. *Prima facie case and legitimate, non-discriminatory reason*

At the first prong, the facts of the case demonstrate that Morales–Figueroa was 55 years old at the time that he was terminated from his employment. BBVA, however, argues that Morales–Figueroa cannot establish a *prima facie* case of age discrimination for two main reasons: (1) Morales–Figueroa did not meet BBVA's legitimate job expectations because of his unauthorized use of BBVA's gas account to buy personal goods and gasoline for his personal car, and (2) Morales–Figueroa was never replaced in the position of messenger because BBVA did not recruit someone to occupy Morales–Figueroa former position after he was terminated, but instead, Santiago and Reyes were the only messengers that continued to work as messengers for BBVA after Morales' termination.

■ Even assuming, *arguendo,* that plaintiff can establish a *prima facie* case of age discrimination, the Court finds that BBVA has articulated a legitimate, non-discriminatory reason for Morales' termination. *See Dominguez–Cruz v. Suttle Caribe, Inc.,* 202 F.3d 424, 430 (1st Cir. 2000)

Specifically, BBVA proffers that it based its decision to terminate Morales on Ginorio's complaint and Frias' findings which resulted from the investigation that Morales–Figueroa had violated BBVA's rules of conduct, specifically Rules 7, 11, 12 and 18 of BBVA's Rules of Conduct and Discipline for its Employees. (SUMF, ¶¶ 17–20) In support of this contention, BBVA has submitted as exhibits to its motion for summary judgment statements under pen-

alty of perjury by Frias (Exh. II), Rivera (Exh. III), Reyes (Exh. IV), Santiago (Exh. 5), Casellas (Exh. VII), Ginorio (Exh. VIII), Izquierdo (Exh. XI), and a copy of an e-mail from Casellas to Frias and Jaime Rivera regarding interviews with Morales–Figueroa, Reyes and Santiago. Furthermore, BBVA included copies of its rules of conduct (Exh. X). Therefore, the Court finds that BBVA has met its burden of production and overcome the presumption that it discriminated against Morales–Figueroa. That is, BBVA has sustained its burden of producing a legitimate reason for terminating Morales–Figueroa.

### 2. *Pretext*

The burden again shifts to Plaintiff Morales–Figueroa, who must "present sufficient evidence to show that the employer's articulated reason[s] . . . [are] a pretext and that the true reason [for the adverse employment action] is discriminatory." *Giusti–Negron,* 260 F.Supp.2d at 409. That is, Morales–Figueroa needs to demonstrate, without help from the presumption of discrimination, that his age was a motivating factor in BBVA's decision.

To demonstrate this, however, Morales–Figueroa cannot prevail by merely questioning the veracity of BBVA's justification, but "he must 'elucidate specific facts which would enable a jury to find that the reason given is not only a sham, a sham intended to cover up the employer's real motive, **age discrimination**' ". *Mesnick,* 950 F.2d at 824 (*quoting Medina–Muñoz,* 896 F.2d at 9)(emphasis added). The plaintiff needs to "show more than his employer miscalculated in deciding that he had outlived his corporate usefulness: good-faith errors in an employer's business judgment are not the stuff of ADEA transgressions." *Freeman v. Package Machinery Co.,* 865 F.2d 1331, 1341 (1st Cir.1988); *see also Giusti–Negron,* 260 F.Supp.2d at 409–410; *Gonzalez,* 304 F.3d at 69 ("[Fed-

eral courts] do 'not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, [the ADEA does] not interfere.' ") (citations omitted).

Plaintiff has not made this showing. To the contrary, in his opposition, Morales–Figueroa attacks BBVA's investigation and Frias' conclusion and intends to convince the Court that he did not incur in the alleged misconduct of which he was accused and that defendant's articulated reasons for his terminations are false. For instance, he argues that, while employed by BBVA, he never engaged in any illegal or incorrect conduct regarding buying gasoline or car maintenance products from either Minillas or Versalles gas stations for his car without the authorization of BBVA's officials; that BBVA's allegations regarding the investigation are false because he never requested a gasoline ticket for $15.00, even though he only bought $10.00 of gasoline for the vehicle, nor a ticket for $10.00 from anyone. (Docket No. 42).

As correctly stated by defendants in their Motion for Summary Judgment, Morales–Figueroa's denial with regards to the alleged misconduct is completely irrelevant and immaterial for purposes of BBVA's motion for summary judgment because there is no dispute as to the fact that Morales–Figueroa denied the alleged misconduct. That is, even assuming that these arguments do create an issue of material fact, they are irrelevant to the issues of this case. "The question is not whether plaintiff's or his fellow employees' version is the true one, but whether Frías and his superiors believed what [they] had been told by those [they] interviewed". *See Ronda Perez v. BBVA,* 404 F.3d 42, 45 (1st Cir.2005) (*citing Zapata–Matos,* 277

F.3d at 45–46 ("[T]he ultimate question is not whether the explanation was false, but whether discrimination was the cause of the termination.")); *Mulero–Rodriguez v. Ponte, Inc.*, 98 F.3d 670, 674 (1st Cir.1996) ("[T]he issue is not whether [the employer's] reasons ... were real, but merely whether the decisionmakers ... believed them to be real."). While plaintiff denied the alleged misconduct, Frias deemed all his informants credible. According to Frias, he reached his conclusion based on the review of Morales' record of vehicle expenses when compared to the records of Reyes and Santiago; the information given by Ginorio to Casellas and the information given by the owner of the Versalles–Gulf Station to Rivera, to which he conferred total credibility; the interviews Frias held with Casellas and Rivera; Morales–Figueroa's demeanor, responses and remarks during the December 6, 2004 meeting, when he was informed and confronted with the information that had been compiled; and the content of the interviews held with Reyes and Santiago on December 6, 2004. (*See* Docket No. 19, exh. II and SUMF, ¶ 18) Plaintiff has done nothing to dispute these facts and demonstrate that BBVA's decision to terminate him was based on his age and not on these acts. In simple words, plaintiff lacks any evidence that BBVA's legitimate and non discriminatory reason for his termination is a pretext for age discrimination. *See Rodriguez–Aviles v. Banco Santander de Puerto Rico*, 467 F.Supp.2d 148 (D.P.R.2006) ("[W]hether a termination decision was wise or done in haste is irrelevant, so long as the decision was not made with discriminatory animus") (quoting *Rivera–Aponte v. Restaurant Metropol # 3*, 338 F.3d 9, 11 (1st Cir.2003)) and *Ruiz v. Posadas de San Juan Associates*, 124 F.3d 243, 248 (1st Cir.1997) ("[plaintiff] must do more than cast doubt on the rationale proffered by the employer, ... the evidence must be of such strength and quality as to permit a reasonable finding that the termination was obviously or manifestly unsupported")

As further grounds for his age discrimination claim, Morales–Figueroa points to various comments allegedly made by Rivera and Casellas related to his age.

 Discriminatory comments may be probative of pretext if a plaintiff can "show that discriminatory comments were made by the key decisionmaker or those in a position to influence the decisionmaker." *Giusti–Negron*, 260 F.Supp.2d at 410; (*citing Santiago–Ramos*, 217 F.3d at 55). "[I]solated or ambiguous remarks, tending to suggest animus based on age, are insufficient, standing alone, to prove an employer's discriminatory intent". *See Santiago v. Canon U.S.A., Inc.*, 138 F.3d 1, 6, n. 8 (1st Cir.1996) and *Speen v. Crown Clothing Corp.*, 102 F.3d 625, 636 (1st Cir.1996). *See also Giusti–Negron*, 260 F.Supp.2d at 410 (" '[S]tray workplace remarks,' as well as statements made either by nondecisionmakers or by decisionmakers not involved in the decisional process, normally are insufficient, standing alone, to establish either pretext or the requisite discriminatory animus.' ") (*quoting Gonzalez*, 304 F.3d at 69); *Ezold v. Wolf, Block, Schorr & Solis–Cohen*, 983 F.2d 509, 545 (3rd Cir. 1992) ("Stray remarks by non-decision makers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision").

In this case, plaintiff contends that Rivera and Casellas referred to him as "grandfather" (abuelo), and "bald old man" (viejo calvo). (SUMF, ¶ 22, Exh. I, p. 37 and 46). According to plaintiff Morales–Figueroa, the context in which these alleged remarks were when Rivera and Casellas assigned him any duty. (Exh. 1, p. 48) Morales–Figueroa, however, testified during his deposition that he did not remember when was the last time Rivera

and Casellas allegedly made the comments.[3] Morales–Figueroa also testified that he verbally complained to Frias on various occasions about these comments, but that he did not remember when was the last time he did it. (*Id.*, p. 37–38 and 51).

Plaintiff, however, has failed to indicate whether those comments were made at a time proximate to his termination or that were related to BBVA's decision to terminate him.[4] Furthermore, Plaintiff has not established any connection between Rivera's and Casellas' comments and BBVA's decision to investigate nor terminate him. That is, Morales–Figueroa has failed to show that those comments were related to BBVA's decision to terminate him.

In addition, even if Rivera and Casellas made the remarks attributed to them by Morales–Figueroa, the Court believes that these remarks would be insufficient. Consequently, Morales–Figueroa fails to establish a claim for discrimination under ADEA and BBVA is entitled to summary judgment on his age discrimination claim.

### C. *Retaliation*

Under *McDonnell Douglas*, plaintiffs bear the initial burden of establishing a *prima facie* case of Title VII discrimination. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817 (1973). The specifications of the *prima facie* proof vary depending on the nature of the discrimination claim. *See Id.* at 802 n. 13, 93 S.Ct. 1817. With respect to retaliation claims, the *prima facie* model requires plaintiffs to show that: 1) they engaged in a protected conduct; 2) they suffered an adverse employment action; and 3) there is a causal connection between the protected conduct and the adverse employment action. *See Pomales v. Celulares Telefonica, Inc.*, 447 F.3d 79, 84 (1st Cir.2006), *Hernandez–Torres v. Intercontinental Trading, Inc.*, 158 F.3d 43, 47 (1st Cir.1998).

To support his retaliation claim, Plaintiff contends that on different occasions he complained to Frias with regards to the harassing and discriminatory actions from his supervisors.[5] Regarding the third element required for a *prima facie* case, Morales–Figueroa asserts that "there is causal connection between Morales' protected activity, and the adverse employment action" inasmuch as "he complained on several occasions, including during the meeting of December 6, 2004, to Mr. Frias about the harassing and discriminatory actions by Mr. Casellas and Mr. Rivera against him" and BBVA failed to conduct any investigation.[6] (Docket No. 42, p. 7) BBVA, on the

---

**3.** Specifically, when he was asked about the alleged remarks he testified:

"Q: You don't know.
A: No, no, but I want to tell you what I do not remember.
Q: Don Julio, you don't know when was the last time?
A: I don't remember.
Q: You do not know.
A: Exactly, I do not remember the last time either". *Id.*, p. 48."

**4.** Through his opposition to defendants' Motion for Summary Judgment, again, Morales–Figueroa indicated that, in addition to Rivera and Casellas, Frias also made discriminatory comments related to Morales' age. *See* Docket No. 42, Exh. 1, ¶¶ 104 and 108. During his

deposition, however, he only mentioned Casellas and Rivera as the persons who made the aforementioned discriminatory remarks. Therefore, the Court will not consider this new contention as a conflicting statement. *See*, n. 1.

**5.** Specifically plaintiff claims that Rivera and Casellas were constantly telling him that his performance was deficient, that he will be discharged, that he should retire because he was old and that they made used to call him "viejo", "abuelo" and "viejo calvo". (Docket No. 42, Exh. 1, ¶ 54)

**6.** Plaintiff, again, intends to create a conflict and resist summary judgment with an affidavit that contradicts the testimony provided

other hand, denies that Morales–Figueroa complained to BBVA's management or to any BBVA's employee of any discriminatory practice. (Docket No. 19) That, however, does not preclude summary judgment.

■ Without deciding whether Morales–Figueroa complained to BBVA's management or to any BBVA's employee of an alleged discriminatory practice, the Court finds that Morales–Figueroa lacks any evidence that causal connection existed between his complaint and his termination and, therefore, he fails to establish a *prima facie* case of retaliation. That is, Morales–Figueroa cannot establish any proximity between the alleged complaint and his termination. For instance, during his deposition, Morales–Figueroa testified he did not remember when he complained to Frias about the alleged discriminatory remarks allegedly made by Casellas and Rivera. (SUMF, ¶ 24) *See Clark County School Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) ("The cases that accept mere temporal proximity between the employer's knowledge of protected activity and an adverse employment action as sufficient evidence of casualty to establish a *prima facie* case uniformly hold that the temporal proximity must be 'very close' ") (citations omitted); *Hysten v. Burlington Northern Santa Fe Ry. Co.*, 372 F.Supp.2d 1246, 1255 (D.Kan. 2005) ("To show a causal connection, plaintiff must demonstrate that 'the individual or individuals who actually undertook the alleged retaliatory acts were aware or should have been aware of plaintiff's participation in the protected activity'. A causal connection may be demonstrated by evidence such as protected conduct closely followed by adverse action. When adverse action is not closely connected in time to protected conduct, plaintiff must provide additional evidence to establish the causation element of a *prima facie* case")(internal citations omitted). Consequently, because Morales–Figueroa cannot show a causal connection between his termination and his alleged complaints of age discrimination, he fails to establish a *prima facie* case of retaliation.

Finally, even if the Court were to assume that Morales–Figueroa established a *prima facie* case of retaliation, BBVA has offered a legitimate, non discriminatory reason for Morales' termination and Plaintiff has not demonstrated that BBVA's reasons for his termination are pretextual, nor does he proffer additional evidence from which a reasonable fact-finder could infer a retaliatory motive on the part of BBVA. Summary judgment is, therefore, granted on this claim as well.

### D. *Supplemental Claims*

Furthermore, because no federal claims on which to ground jurisdiction remain in this case, plaintiffs' supplemental state law claims are dismissed **WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1367(c)(3).

### *CONCLUSION*

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment. Plaintiffs' ADA and Title VII claims are dismissed **with prejudice.** Supplemental law claims are dismissed **without prejudice.** Judgment shall enter accordingly.

**IT IS SO ORDERED.**

---

during his deposition without giving a satisfactory explanation of why his testimony is changed. The Court, however, declines plaintiff's invitation. *Ramos v. Roman,* 83 F.Supp.2d at 247.