USCA1 Opinion

 

 For the First Circuit ____________________ No. 96-2000 MANUEL T. HIDALGO, Plaintiff, Appellant, v. OVERSEAS CONDADO INSURANCE AGENCIES, INC., Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Salvador E. Casellas, U.S. District Judge] ____________________ Before Torruella, Chief Judge, Coffin, Senior Circuit Judge, and Stahl, Circuit Judge. ____________________ Andres  Guillemard-Noble with whom Joan  S.  Peters and Nachman, Santiago & Guillemard were on brief for appellant. Jorge  E. Perez  Diaz with whom Pietrantoni  Mendez  & Alvarez was on brief for appellee. ____________________ August 11, 1997 ____________________ STAHL,  Circuit Judge . Plaintiff-appellant Manuel T. Hidalgo appeals the district court's grant of summary judgment in favor of defendant-appellee Overseas Condado Insurance Agencies, Inc. on Hidalgo's claim for damages and equitable relief pursuant to the Age Discrimination and Employment Act, 29 U.S.C. SS 621-634. Finding that plaintiff-appellant failed to present evidence sufficient to meet his burden of persuasion concerning unlawful age animus, we affirm. Background On January 15, 1963, Hidalgo and two partners formed the Condado Insurance Agency, Inc. ("Condado"). Hidalgo subsequently became the sole shareholder. In September 1982, Hidalgo sold Condado to Royal Insurance Ltd. ("Royal"). After the sale, Royal retained Hidalgo as president of Condado. Some time later, Royal acquired Overseas Insurance Agencies, Inc., and, in 1988, merged this agency with Condado to form the Overseas Condado Insurance Agencies, Inc. ("Overseas"). In the process of the merger, Royal created the Condado Division of Overseas and named Hidalgo president of the Division. The Condado Division consisted of Hidalgo, Sagrario Maiz del Toro (Hidalgo's secretary) and Doris Rodriguez (Hidalgo's assistant). Dating from the sale of Condado to Royal, Hidalgo's functions included promoting and servicing all of Condado's existing accounts and acquiring new accounts.  On September 1, 1993, Hidalgo's sixty-fifth birthday, Hidalgo was to become eligible to retire and receive normal -3- benefits under Overseas' retirement plan. Approximately five months before this date, on March 29, 1993, Victor Rios, President of Royal and Chairman of Overseas, sent Hidalgo a letter informing him that Overseas recognized that he would become eligible for normal retirement benefits on September 1, 1993, and that Overseas expected him to retire on that date "[i]n accordance with the company's established guidelines."  After receiving this letter, Hidalgo informed Rios that he did not intend to retire on September 1. On July 2, 1993, Rios sent Hidalgo another communication informing him that the Condado Division would cease to exist on September 1 because Overseas planned to integrate it into its "regular operation." In this same communication, Rios instructed Hidalgo that Overseas would wait until September 1 to allow him to "fully qualify for . . . [his] pension plan," but that it did not intend to extend his employment contract after that date. On August 18, Hidalgo again informed Rios of his desire to remain as president of the Condado Division. Rios replied by offering Hidalgo an arrangement whereby he could function as an "independent producer" with his compensation based on commissions and bonuses. Hidalgo refused this offer.  Subsequently, Hidalgo filed complaints with the Equal Employment Opportunity Commission ("EEOC") and the Department of Labor and Human Resources of Puerto Rico. On December 30, 1993, the Department of Labor issued Hidalgo a Notice of Right -4- 4 to Sue. On March 10, 1994, Hidalgo filed in federal district court the complaint which underlies this appeal. He alleged that Overseas dismissed him from his job because of his age and requested damages and equitable relief pursuant to the Age Discrimination and Employment Act ("ADEA"), 29 U.S.C. SS 621- 634. Hidalgo also invoked the district court's supplemental jurisdiction pursuant to 28 U.S.C. S 1367 for his state law claims seeking compensation for age-based discrimination, 29 P.R. Laws Ann. tit. 29, S 146 (1985).  On June 24, 1994, Overseas filed a Motion to Dismiss or for Summary Judgment. On June 20, 1996, the district court (Casellas, J.), treating the motion as a motion for summary judgment, determined that Hidalgo failed to establish one of the elements necessary to state a prima facie case of employment discrimination under the ADEA. Notwithstanding this determination, the court further ruled that Hidalgo failed either to prove that Overseas' articulated legitimate reasons for his dismissal were a "mere pretext" or to provide evidence of discriminatory animus on Overseas' behalf. The court also refused to exercise pendent jurisdiction over Hidalgo's state law claims. Consequently, the court disposed of Hidalgo's complaint in its entirety. This appeal ensued. Standard of Review  1. We note that Hidalgo did not appeal the dismissal of the state law claims he stated in his complaint. -5- 5 "[O]ur review of a grant of summary judgment is de novo, [and] we, like the district court, are obliged to review the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." LeBlanc v. Great  Am.  Ins.  Co., 6 F.3d 836, 841 (1st Cir. 1993). "'An inference is reasonable only if it can be drawn from the evidence without resort to speculation.'" Mulero-Rodriguez v. Ponte,  Inc., 98 F.3d 670, 672 (1st Cir. 1996) (quoting Frieze v. Boatmen's  Bank  of  Boston, 950 F.2d 538, 541 (8th Cir. 1991)). The district court's award of summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]o defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting 'enough competent evidence to enable a finding favorable to the nonmoving party.'"  LeBlanc, 6 F.3d at 842 (quoting Goldman v. First  Nat'l  Bank  of  Boston, 985 F.2d 1113, 1116 (1st Cir. 1993)). "An appellate panel is not restricted to the district court's reasoning but can affirm a summary judgment on any independently sufficient ground." Mesnick v. General  Elec.  Co., 950 F.2d 816, 822 (1st Cir. 1991). -6- 6 Discussion Hidalgo makes two primary arguments. He first argues that the district court erred in determining that he failed to establish a prima facie case of age discrimination under the ADEA. He then contends that the district court improperly concluded that he did not prove that Overseas' reasons for dismissing him were pretextual and that Overseas' actions derived from discriminatory animus. We address these contentions in turn. In an ADEA discrimination action, the plaintiff bears the ultimate "'burden of proving that his years were the determinative factor in his discharge, that is, that he would not have been fired but for his age.'" Mesnick v. General Elec. Co., 950 F.2d 816, 823 (1st Cir. 1991) (quoting Freeman v. Package  Mach.  Co., 865 F.2d 1331, 1335 (1st Cir. 1988)). "[W]hen there is little overt evidence of age discrimination, the case usually follows the ritualized burden-shifting paradigm" set forth in McDonnell  Douglas  Corp. v. Green, 411 U.S. 792, 802-05 (1973). LeBlanc, 6 F.3d at 842. Pursuant to McDonnell  Douglas, a plaintiff must present a prima facie  2. Interspersed with these two arguments, in addition to being designated in a separate section of his brief, is Hidalgo's argument that the district court committed reversible error because it viewed the facts in the light most favorable to the nonmoving party, namely Overseas. Instead of analyzing this assertion independently, we address it in the context of our analysis of Hidalgo's two primary contentions concerning the district court's disposition of his ADEA claim.  -7- 7 "showing of certain standardized elements suggestive of possible discrimination." Id.  In this circuit, McDonnell Douglas' burden shifting paradigm assumes a slightly different form in age discrimination cases depending on whether or not the dismissal represented part of a reduction in force. If the plaintiff was not dismissed as part of a reduction in force, the plaintiff establishes a prima facie case by demonstrating the following: "(1) [he] was at least forty years of age, (2) [he] met the employer's legitimate job performance expectations, (3) [he] experienced adverse employment action, and (4) [he] was replaced by a person with roughly equivalent job qualifications." Goldman, 985 F.2d at 1117. With respect to the fourth element necessary to establish a prima facie case in a nonreduction in force scenario, "[i]t is enough for [the] plaintiff to show that the employer sought some form of replacement performance, which would demonstrate its 'continued need for the same services and skills.'"  Kale v.  Combined Ins. Co. of Am. , 861 F.2d 746, 760 (1st Cir. 1988) (quoting  Loeb v. Textron,  Inc., 600 F.2d 1003, 1013 (1st Cir. 1979)); see Keisling v.  SER-Jobs for Progress, Inc. , 19 F.3d 755, 760 (1st Cir. 1994);  Vega v.  Kodak Caribbean, Ltd. , 3 F.3d 476, 479 (1st Cir. 1993). "A replacement need not be sought from outside the company, of course, nor need he be designated formally as -8- 8 such." Loeb, 600 F.2d at 1013 n.11; see Keisling, 19 F.3d at 760.  If the employer dismissed the plaintiff as part of a reduction in force, the plaintiff "need not show replacement by someone with equivalent job qualifications. Instead, to satisfy element (4), the plaintiff may demonstrate either that 'the employer did not treat age neutrally or that younger persons were retained in the same position.'" LeBlanc, 6 F.3d at 842 (quoting Hebert v. Mohawk  Rubber  Co., 872 F.2d 1104, 1111 (1st Cir. 1989)). The district court granted summary judgment in Overseas' favor because it found that Hidalgo had failed to make out a prima facie case of age discrimination. Although  3. In his opposition to Overseas' summary judgment motion and his surreply to Overseas' response to his opposition, Hidalgo argued that his termination was not part of a reduction in force; he failed even to articulate an argument addressing the potentiality that his dismissal was part of a reduction in force. In his appellate brief, Hidalgo, for the first time, insists that even if his dismissal occurred as part of a reduction in force scenario, Overseas did not treat age neutrally. "It is well established that this court will not consider an argument presented for the first time on appeal." Villafane-Neriz v.  F.D.I.C., 75 F.3d 727, 734 (1st Cir. 1996); see Poliquin v. Garden Way, Inc., 989 F.2d 527, 531 (1st Cir. 1993); Clauson v. Smith, 823 F.2d 660, 666 (1st Cir. 1987). Because Hidalgo did not address the argument that his termination constituted a reduction in force before the district court, we will not consider his reduction of force arguments on appeal. See Johnston v. Holiday Inns, Inc., 595 F.2d 890, 894 (1st Cir. 1979) (indicating that exceptions to the general rule proscribing the assertion of arguments for the first time on appeal exist only "'in horrendous cases where a gross miscarriage of justice would occur'") (quoting Newark Morning Ledger Co. v.  United States , 539 F.2d 929, 932 (3d Cir. 1976)).  -9- 9 the court regarded this case as presenting a reduction in force scenario, it considered whether Hidalgo's claim had merit under the law governing a non-reduction in force scenario as well. The district court concluded specifically that Overseas did not have a continuing need for someone of Hidalgo's skills, that Hidalgo failed to establish that Overseas did not treat age neutrally, and that Overseas did not retain younger persons in the same position. The court further ruled that Hidalgo failed to "properly show he was 'replaced by a person with roughly equivalent job qualifications.'"  "While it is not clear to us that the court erred in this regard, we prefer--because the question is so close--to assume for present purposes that . . . [Hidalgo] did establish a prima facie case within the McDonnell Douglas formulation." LeBlanc, 6 F.3d at 844;  see  Pages-Cahue v.  Iberia Lineas Aereas de Espana , 82 F.3d 533, 537 (1st Cir. 1996) (assuming, without concluding, that plaintiff established a prima facie case because doing so did not alter the ultimate outcome); Udo v. Tomes, 54 F.3d 9, 13 (1st Cir. 1995) (same);  Mesnick, 950 F.2d at 825 n.7 (same). Hidalgo lacks direct evidence that Overseas terminated him because of his age, and the parties do not dispute that he satisfied the first three of the four elements -10- 10 necessary to establish a prima facie case under McDonnell Douglas.  With respect to the fourth element at issue in this case, Hidalgo presented, and the district court accepted, evidence that subsequent to his dismissal, Overseas assigned certain accounts for which Hidalgo had been responsible to other Overseas employees who handled them in addition to the work they performed prior to his dismissal. Hidalgo also submitted evidence that subsequent to his termination Overseas informed certain of his former accounts of its desire to "continue servicing" them "as heretofore." It seems plausible, viewing Hidalgo's evidence concerning the servicing of his accounts by other Overseas employees after September 1, 1993 and Overseas' communications to at least one of his former accounts in the light most favorable to him, see LeBlanc, 6 F.3d at 841, that Overseas had a "'continued need for the same services and skills'" that Hidalgo offered before his termination, Kale, 861 F.2d at 760 (quoting Loeb, 600 F.2d at 1013); see also Keisling, 19 F.3d at 760 (quoting Loeb, 600 F.2d at 1013). Specifically, like the plaintiffs in Loeb,  4. The parties do not dispute that Hidalgo was at least forty years of age, that he met Overseas' legitimate job performance expectations, and that he experienced adverse employment action. 5. We find  Loeb,  Kale, and  Keisling particularly persuasive in this context because they constituted nonreduction of force cases. Despite Overseas' contention and the district court's ruling that this case actually entailed a reduction of force, -11- 11 Kale, and Keisling, Hidalgo may well have met his burden concerning the fourth element necessary to establish a prima facie case under McDonnell  Douglas through evidence that Hidalgo's "'job functions were absorbed by several different employees of defendant.'" Kale, 861 F.2d at 760 (quoting  Loeb, 600 F.2d at 1013);  see  Keisling, 19 F.3d at 760. We recognize  we afford Hidalgo the benefit of the doubt for purposes of argument and thus treat this as a nonreduction of force case. 6. In his Unsworn Declaration Under Penalty of Perjury, Rios stated that "[n]obody performs the services that [Hidalgo] . . . was performing or assumed his job responsibilities, as there is no continued need for an individual of Mr. Hidalgo's skills or who could provide the services he provided." This assertion does not jibe with Rios' subsequent admission that certain accounts for which Hidalgo had responsibility prior to his termination "were assigned to other Overseas[] employees who handle[d] them in addition to the work they performed before the Condado [D]ivision was eliminated." Moreover, Hidalgo presented testimony from employees of his former accounts indicating that subsequent to his termination, Overseas employees contacted them concerning these accounts. The fact that certain of Hidalgo's former accounts were "handled" by several other Overseas employees subsequent to his termination would seem to satisfy the  McDonnell Douglas ' fourth requirement for establishing a prima facie ADEA claim, at least as interpreted in Loeb, Kale, and Keisling. We recognize that LeBlanc stated specifically that "[a] discharged employee 'is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work.' Rather, '[a] person is replaced only when another employee is hired or reassigned to perform plaintiff's duties.'" LeBlanc, 6 F.3d at 846 (internal citations omitted) (quoting Barnes v. Gencorp  Inc., 896 F.2d 1457, 1465 (6th Cir. 1990)); see Pages-Cahue v. Iberia Lineas Aereas  de  Espana, 82 F.3d 533, 536 (1st Cir. 1996) (same). LeBlanc,  Barnes and  Pages-Cahue, however, constituted reduction of force cases, and, thus, the analytical construct they set forth with respect to McDonnell  Douglas' fourth element does not appear as persuasive as that of  Loeb,  Kale, and  Keisling in a nonreduction of force scenario. -12- 12 that this evidence is not overwhelming; however, as in  LeBlanc, see 6 F.3d at 844, we assume, without concluding, that Hidalgo has satisfied  McDonnell Douglas ' fourth element, mindful of the fact that "'the burden of making out a prima facie case is 'not onerous.'" Mesnick, 950 F.2d at 823 (1st Cir. 1991) (quoting Texas Dep't  of Community Affairs v.  Burdine, 450 U.S. 248, 253 (1981)). "Establishment of the prescribed prima facie case creates a presumption that the employer engaged in impermissible age discrimination." LeBlanc, 6 F.3d at 842. Once a plaintiff has presented a prima facie case of discrimination, the burden shifts to the defendant "to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected . . . for a legitimate, nondiscriminatory reason." Burdine, 450 U.S. at 254. "The employer's burden at this stage is one of production; the burden of persuasion remains plaintiff's at all times." Lawrence v. Northrop  Corp., 980 F.2d 66, 69 (1st Cir. 1992). The parties in this case do not dispute that Overseas met its burden of production and offered non-discriminatory rationale for its decision to terminate Hidalgo. In rebutting Hidalgo's claim of age discrimination, Overseas advanced two nondiscriminatory reasons for its actions. First, Overseas indicated that it decided to eliminate the Condado Division, and thus terminate Hidalgo's -13- 13 position as president of the Division, because the Division had become unprofitable since 1990. Second, according to Overseas, "various insurance agents and brokers who placed policies with Royal were complaining that the Condado Division, and particularly Mr. Hidalgo, was interfering with some of its [sic] clients. These actions affected Royal's business relationship with these independent brokers and agents, some of which were among the largest in Puerto Rico and responsible for a substantial part of Royal's business." "'If the defendant carries the burden of production, the presumption raised by the prima facie cases is rebutted,' and 'drops from the case.'" St.  Mary's  Honor  Ctr. v. Hicks, 509 U.S. 502, 507 (1993) (internal citations omitted) (quoting Burdine, 450 U.S. at 255, 255 n.10). The plaintiff then "retains the burden of persuasion." Burdine, 450 U.S. at 256. "In the context of a summary judgment proceeding, Hicks requires that, once the employer has advanced a legitimate, nondiscriminatory basis for its adverse employment decision, the plaintiff, before becoming entitled to bring the case before the trier of fact, must show evidence sufficient for the factfinder reasonably to conclude that the employer's decision to discharge him . . . was wrongfully based on age." LeBlanc, 6 F.3d at 843; see Hicks, 509 U.S. at 515 ("[A] reason cannot  7. The Hicks decision, unlike this decision, derived from an appeal of a bench trial. -14- 14 be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason."); Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 9 (1st Cir. 1988) ("[W]hen, as here, the employer has articulated a presumptively legitimate reason for discharging an employee, the latter must elucidate specific facts which would enable a jury to find that the reason given was not only a sham, but a sham intended to cover up the employer's real motive: age discrimination."); Mesnick, 950 F.2d at 825 ("[I]n a case where the first two steps of the McDonnell  Douglas pavane have been satisfactorily choreographed, a plaintiff must offer  some minimally sufficient evidence, direct or indirect, both of pretext and of the employer's discriminatory animus to prevail in the face of a properly drawn Rule 56 motion.") (emphasis added); see also Sanchez v. Puerto  Rico  Oil  Co., 37 F.3d 712, 720 (1st Cir. 1994);  Woods v.  Friction Materials, Inc. , 30 F.3d 255, 260 (1st Cir. 1994). Thus, Hidalgo "now must . . . demonstrate that the proffered reason was not the true reason for the employment decision. This burden now merges with the ultimate burden of persuading the court that . . . [the plaintiff] has been the victim of intentional discrimination." Burdine, 450 U.S. at 256; see Hicks, 509 U.S. at 511, 515.  At this stage, "the  facts that comprised plaintiff's prima facie case may be considered, but the inference of -15- 15 discrimination originally attributable to those facts no longer pertains." Sanchez, 37 F.3d at 720. "Direct or indirect evidence of discriminatory motive may do, but 'the evidence as a whole . . . must be sufficient for a reasonable factfinder to infer that the employer's decision was motivated by age animus.'" Goldman, 985 F.2d at 1117 (quoting Connell v. Bank of Boston , 924 F.2d 1169, 1172 n.3 (1st Cir. 1991)),  quoted  in LeBlanc, 6 F.3d at 843. "Thus, the plaintiff cannot avert summary judgment if the record is devoid of adequate direct or circumstantial evidence of discriminatory animus on the part of the employer." LeBlanc, 6 F.3d at 843. Hidalgo offered circumstantial evidence to demonstrate both that Overseas' stated reasons for his termination was pretextual and that it was pretext for discriminatory age animus. While we find that Hidalgo failed to produce evidence sufficient to meet his ultimate burden of persuasion,  see  Burdine, 450 U.S. at 253, we present Hidalgo's evidence in detail in light of his contention that the district court failed to consider this evidence in the light most favorable to his claim. In his Unsworn Declaration Upon Penalty of Perjury, Hidalgo indicated that between 1984 and 1986, the net underwriting profit for the Condado Division climbed from $249,803.00 to $422,826.00. Hidalgo did not present figures for the period after 1988, when the Overseas and Condado operations merged, because, according to Hidalgo, -16- 16 Overseas failed to make these figures available upon his request. Yet, he did state in his Unsworn Declaration that Overseas underestimated the profitability of the Condado Division since 1990. Hidalgo contends that Overseas' failure to provide the figures concerning the profitability of the Condado Division, combined with his testimony concerning additional profits stemming from the Division, suffices to demonstrate pretext on Overseas' part.  Hidalgo also submitted two communications from his supervisor, Ramon Lozada, dated April 10, 1991 and January 16, 1993, as proof of Overseas' enthusiasm for Hidalgo's work as president of the Condado Division and its belief that his prospects with Overseas were excellent. In addition, Hidalgo declared in his Unsworn Declaration that as a member of the Overseas Board of Directors, he was present at a March 25, 1993 meeting during which the alleged unprofitability of the Condado Division was never discussed. Hidalgo also stated in his Unsworn Declaration that it was not until he informed Overseas that he did not intend to retire on September 1 that Overseas informed him that his termination constituted part of a plan to eliminate the Condado Division effective September 1.  Hidalgo offered evidence that immediately after his dismissal and the elimination of the Condado Division, Rodriguez on several occasions performed some of the tasks that she previously had performed as his assistant. According to -17- 17 Hidalgo, this activity, considered in conjunction with the fact that certain accounts for which he previously was responsible remained with Overseas and were attended to by other Overseas employees after his dismissal, demonstrated that the Condado Division "continued to function as before, albeit under a different name." Hidalgo insists that this evidence "combine[d] to prove that defendant's alleged reason, a decision to close the Condado Division, was a sham, masking defendant's illegal age discrimination."  Hidalgo finally maintains that Overseas never informed him of the alleged complaints of brokers and agents concerning his interference with their business. Instead, Hidalgo offered an evaluation of his work that Lozada prepared on January 16, 1993 (slightly more than two months before Rios informed him that Overseas expected him to retire effective September 1) in which he received the best possible ratings in all categories, including the category labeled: "How successful is he in getting along with people in his day-to-day work relationships?" In fact, the evaluation indicated that he "stands out as being among the best . . . known" and that he "will qualify for advancement beyond the next higher job classification or level of responsibility." Hidalgo insists that this evidence "raises a genuine issue of fact as to -18- 18 whether age discrimination motivated the retirement or the dismissal decision of defendant." We doubt that the evidence that Hidalgo submitted, taken in the light most favorable to his claim,  see  LeBlanc, 6 F.3d at 841, demonstrates that Overseas' asserted reasons for dismissing him were pretextual, see Lehman v. Prudential Ins. Co.  of  Am., 74 F.3d 323, 330 (1st Cir. 1996). We note, however, that Hidalgo cites Mulero-Rodriguez to support his pretext argument. In Mulero-Rodriguez, the plaintiff, a director of the defendant corporation, stated in his deposition testimony that the defendant never informed him of its dissatisfaction with his ability to assure an inventory level  8. Overseas argues that much of the evidence Hidalgo submits to demonstrate pretext and age-based animus fails to comply with the requirements of Fed. R. Civ. P. 56(e) and thus should not be considered on appeal. Overseas also contends that much of this evidence was untimely presented to the district court. Given the ultimate disposition of this appeal, we deem it unnecessary to address these arguments. We assume for the sake of argument, without concluding, that the evidence Hidalgo submitted satisfies the minimum requirements of Rule 56(e). 9. In addition to Mulero-Rodriguez, Hidalgo cites Hebert and Woodman v.  Haemonetics Corp. , 51 F.3d 1087 (1st Cir. 1995), to support his contention that the evidence he submitted sufficed to demonstrate a material issue of fact concerning pretext. In these cases, however, the evidence that the plaintiffs submitted to demonstrate pretext was far more extensive and far more persuasive than the evidence Hidalgo presents in this instance. See Woodman, 51 F.3d at 1093 (discussing not only performance evaluations but also defendant's admission of disfavoring older employers as creating a reasonable inference of pretext for intentional age discrimination); Hebert, 872 F.2d at 1115 (listing employer's failure to inform plaintiff of adverse feedback on his work as only one of many pieces of circumstantial evidence that the plaintiff submitted in addition to statistical evidence).  -19- 19 necessary for the smooth operation of the business. See 98 F.3d at 675. The plaintiff also indicated that the defendant failed to produce "business records in any way reflecting a shortage [of inventory] or lost sales or income based thereon." Id. Considering only this evidence, the  Mulero-Rodriguez court determined, "giving credence to [the plaintiff's] . . . testimony," that the issue of pretext "should be left to the factfinders." Id. Much like the plaintiff in  Mulero-Rodriguez, Hidalgo testified in his Unsworn Declaration both that Overseas never informed him of the alleged complaints against him and that Overseas failed to produce any business records supporting its allegation of the Condado Division's unprofitability. While we doubt that these similarities suffice to demonstrate pretext on Overseas' part, we recognize that this is a close call and, therefore, we assume, without deciding, that Hidalgo established pretext. See  Udo, 54 F.3d at 13 (assuming  arguendo that employer's action was pretextual). We thus "turn directly to the question of whether [Hidalgo] . . . can show that the real reason [for his dismissal] was age discrimination." Id. at 676. In this case, "even if [Hidalgo] . . . fashioned a triable issue as to pretext, there was . . . no 'significantly probative' evidence to show that the pretext masked age discrimination." Medina-Munoz, 896 F.2d at 9 (quoting  Anderson -20- 20 v.  Liberty Lobby, Inc. , 477 U.S. 242, 249-50 (1986)). Hidalgo offered no evidence that reasonably could be construed to indicate that Overseas intended to discriminate against him because of his age. None of Hidalgo's evidence concerning either the profitability of the Condado Division or Overseas' failure to inform him of the alleged complaints against him by brokers and agents points to any age  related  animus on Overseas' behalf. Similarly, the evidence concerning the ongoing servicing of Hidalgo's former accounts by Overseas employees, including Rodriguez's work on these accounts, and Overseas' apparent satisfaction with his performance, though perhaps indicative of pretext on Overseas' part, does not evidence any  age-based discriminatory intent . As we previously have stated, "[t]he 'ADEA does not stop a company from discharging an employee for any reason (fair or unfair) or for no reason, so long as the decision to fire does not stem from the person's age.' Courts may not sit as super personnel departments, assessing the merits--or even the rationality--of employers' nondiscriminatory business decisions."  Mesnick, 950 F.2d at 825 (internal citations omitted) (quoting  Freeman, 865 F.2d at 1341). The only circumstantial evidence that Hidalgo sets forth bearing upon Overseas' regard for his age comprises the memorandum Rios sent to him on March 29, 1993 informing him that Overseas, "[i]n accordance with the company's established -21- 21 guidelines . . . fully expect[ed]" him to retire when he became eligible for normal retirement benefits on September 1, 1993. Hidalgo makes much of this letter in light of the Royal Retirement Plan's provision that despite the fact that Royal employees' "Normal Retirement Date" was the first day of the month after they turned sixty-five, if an employee "decide[d] to continue working past [his] . . . Normal Retirement Date, [he could] . . . do so."  This evidence does not "raise a genuine issue of fact as to whether discrimination motivated the adverse employment action." Olivera v. Nestle  P.R.,  Inc., 922 F.2d 43, 50 (1st Cir. 1990). The reasonable inference,  see  Mulero-Rodriguez, 98 F.3d at 672, deriving from this evidence is that Overseas expected its employees to retire when they became eligible for normal retirement benefits at the age of sixty-five. The Royal Retirement Plan indicates that the normal retirement date for Overseas employees falls at or near their sixty-fifth birthday. Overseas' March 29 letter to Hidalgo indicated its expectation that Hidalgo would retire on or near his Normal Retirement Date. We thus do not believe that the March 29 letter constituted "'significantly probative,'"  Medina-Munoz, 896 F.2d at 9 (quoting Anderson, 477 U.S. at 249-50), "probative," Sanchez, 37 F.3d at 720, "adequate,"  Mulero-Rodriguez, 98 F.3d at 673, "sufficient," LeBlanc, 6 F.3d at 849, or even "minimally sufficient," Vega, 3 F.3d at 479, circumstantial -22- 22 evidence to permit a reasonable jury to find discriminatory animus on Overseas' part, see Lehman, 74 F.3d at 330 (concluding that the plaintiff's "evidence, taken at its best, was insufficient to show that . . . [the defendant] was motivated by age discrimination");  see  also  LeBlanc, 6 F.3d at 846-49;  Goldman, 985 F.2d at 119-21;  Mesnick, 950 F.2d at 826; Menard v.  First Sec. Servs. Corp. , 848 F.2d 281, 289 (1st Cir. 1988). In our view, the fact that Overseas expected Hidalgo to retire when he became eligible for his normal retirement benefits would not permit a jury determination that Overseas was motivated by age animus when it decided to dismiss Hidalgo. See Udo, 54 F.3d at 14 (finding letter employer sent to employee informing him that employer expected him to retire when he turned sixty-five did not evidence age animus on employer's behalf).  When considered in the context of the record evidence as a whole, see Connell, 924 F.2d at 1172 n.3; see also Goldman, 985 F.2d at 1119 ("[T]he totality of the circumstances must permit a reasonable inference that the employer's justification for the challenged action was pretext for age discrimination."), viewed in the light most favorable to Hidalgo, see LeBlanc, 6 F.3d at 841, the March 29 letter and the Royal Retirement Plan still would not suffice to allow a jury reasonably to find that Overseas exhibited age-based animus in this case. Overseas sent Hidalgo the letter -23- 23 concerning its expectation that he retire on his Normal Retirement Date more than five months prior to his sixty-fifth birthday and repeatedly declared its intention to take no action that would interfere with his ability to qualify for normal retirement benefits. On July 2, 1993, Overseas explained to Hidalgo its independent business decision to eliminate the Condado Division effective September 1, 1993, which accommodated the full vesting of his pension plan. Despite its decision to eliminate the Condado Division, on August 19, 1993, Overseas offered to employ Hidalgo as an independent producer, with compensation based on commission and bonuses. Hidalgo rejected these offers, and, on September 1, Overseas implemented the plan it had enunciated to Hidalgo on July 2 to eliminate the Condado Division as a separate entity. Contrary to Hidalgo's assertions, we believe the only inference that the evidence in the record supports, without improper speculation on our part, is that Overseas simply timed its elimination of the Condado Division to dovetail with Hidalgo's Normal Retirement Date. This would be entirely appropriate. See Goldman, 985 F.2d at 1118 n.4 ("[A] 'mere showing that the employer's articulated reason may shield another (possibly nondiscriminatory) reason does not create a dispute of material fact' sufficient to withstand summary judgment.");  Mesnick, 950 F.2d at 825;  see  also  Udo, 54 F.3d at 14 (finding letter expressing employer's expectation that -24- 24 employee would retire at age sixty-five insufficient evidence of discriminatory age animus to withstand summary judgment where employer subsequently articulated nondiscriminatory rationale for dismissing employee).  As we previously have noted, "the material creating the factual dispute must herald the existence of 'definite, competent evidence' fortifying the plaintiff's version of the truth. Optimistic conjecture . . . or hopeful surmise will not suffice." Vega, 3 F.3d at 479 (internal citations omitted) (quoting Mesnick, 950 F.2d at 822). In this case, Hidalgo's arguments "are based largely upon . . . improbable inferences[] and unsupported speculation,"  LeBlanc, 6 F.3d at 849, and thus fall short. In light of the evidence in the record, viewed in the light most favorable to Hidalgo, we do not believe that a trier of fact could conclude that Overseas unlawfully discriminated against Hidalgo. We thus affirm the district court's award of summary judgment in favor of Overseas. Costs to Appellee. -25- 25