Mario C. DELANOY, et al., Plaintiff

v.

**AEROTEK, INC., Defendant.**

Civil No. 07–1871(DRD).

United States District Court, D. Puerto Rico.

March 31, 2009.

Ruben T. Nigaglioni, Rafael J. Martinez Garcia, Nigaglioni & Ferraiuoli Law Offices PSC, San Juan, PR, for Plaintiffs.

Shiara L. Dilone–Fernandez, Carl E. Schuster, Schuster & Aguilo LLP, San Juan, PR, for Defendant.

## OPINION AND ORDER

DANIEL R. DOMINGUEZ, District Judge.

### I. Procedural and Factual Background

Plaintiff, Mario C. Delanoy ("Delanoy"), began his employment with defendant, Aerotek, Inc. ("Aerotek"), around September or October of 2004 as General Director in Aerotek's Puerto Rico offices. (Docket 23–3 at 63; Docket 23–5 at 12–13) In May of 2005, Delanoy's position at Aerotek changed from General Director to Director of Business Development. (Docket 23–3 at 136–37; Docket 23–7.) Delanoy filed an initial charge before the Puerto Rico Department of Labor Antidiscrimination Unit ("ADU") on March 22, 2006 alleging discrimination on the basis of age. (Docket 23–17.) Delanoy was placed on a Performance Improvement Plan ("PIP") on April 26, 2006. (Docket 23–22.) Aerotek subsequently discharged Delanoy on June 23, 2006. (Docket 23–3 at 398.) On the same day, Delanoy filed another ADU charge alleging retaliation based on his filing of the previous ADU charge. (Docket 23–27.) On September 19, 2007, Delanoy brought the present action alleging discrimination and retaliation pursuant to: (1) the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634 (2000); (2) Puerto Rico Law 100 ("Law 100"), P.R. Laws Ann. tit. 29, § 146 (2006); (3) Puerto Rico Law 80 ("Law 80"), P.R. Laws Ann. tit. 29, § 185a-b (2006); Puerto Rico Law 115 ("Law 115"), P.R. Laws Ann. tit. 29, § 194a (2006); and (4) Article 1802 of the Puerto Rico Civil Code ("Article 1802"), P.R. Laws Ann., tit. 31, § 5141 (2006).

Pending before the court is the motion for summary judgment, (Docket 23), filed by Aerotek, the opposition to said motion for summary judgment, (Docket 34), filed by Delanoy, and Aerotek's reply thereto, (Docket 41).

### II. Legal Analysis

#### A. Summary Judgment Standard

The framework of Fed.R.Civ.P. 56 provides that it is appropriate to enter

summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986); *Abbadessa v. Moore Business Forms, Inc.,* 987 F.2d 18, 22 (1st Cir.1993). Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there are "no genuine issue as to any material facts," and that he is "entitled to judgment as a matter of law." *Vega–Rodriguez v. Puerto Rico Tel. Co.,* 110 F.3d 174, 178 (1st Cir.1997). When the moving party asserts that the competent evidence clearly demonstrates that it is entitled to judgment and after the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." *Cortes–Irizarry v. Corporacion Insular,* 111 F.3d 184, 187 (1st Cir.1997).

▉ At the summary judgment stage, the trial court examines the entire record "in the light most flattering to the non-movant and indulges all reasonable inferences in that party's favor. Only if the record, viewed in the manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." *Cadle Company v. Hayes,* 116 F.3d 957 at 959–60 (1st Cir.1997); *see also Suarez v. Pueblo Int'l, Inc.,* 229 F.3d 49, 53 (1st Cir.2000); *Cortes–Irizarry,* 111 F.3d at 187; *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). " 'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.' " *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)(*quoting Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); *see also Lytle v. Household Mfg., Inc.,* 494 U.S. 545, 554–555, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990); *Continental Ore Co. v. Union Carbide & Carbon Corp.,* 370 U.S. 690, 696, n. 6, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962).

▉ Notwithstanding that there is no opposition to a summary judgement, the Court must entertain the motion on the merits and may not grant the request as a sanction even for failure to file an opposition. *See de la Vega v. San Juan Star,* 377 F.3d 111 (1st Cir.2004). Issues of motive and intent as to the conduct of any party will normally preclude the Court from granting summary judgement. *Mulero–Rodriguez v. Ponte, Inc.,* 98 F.3d 670, 677 (1st Cir.1996)(reversing summary judgement and emphasizing that "determinations of motive and intent ... are questions better suited for the jury")(internal quotation marks omitted) (citation omitted)

> We believe that summary judgment procedures should be used sparingly ... where the issues of motive and intent play leading roles ... It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given to their testimony can be appraised. Trial by affidavit is no substitute for trial by jury which so long has been the hallmark of 'even handed justice.'

*See Poller v. Columbia Broad. Sys.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); cf. *Pullman–Standard v. Swint,* 456 U.S. 273, 288–90, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982) (discriminatory intent is a factual matter for the trier of fact); *see also William Coll v. PB Diag-*

*nostic Sys., Inc.,* 50 F.3d 1115, 1121 (1st Cir.1995); *Oliver v. Digital Equip. Corp.,* 846 F.2d 103, 107 (1st Cir.1988); *Lipsett v. University of P.R.,* 864 F.2d 881, 895 (1st Cir.1988). "[J]ury judgments about credibility are typically thought to be of special importance. Thus courts are particularly cautious about granting summary judgment in such cases." *See Stepanischen v. Merchants Despatch Transp. Corp.,* 722 F.2d 922, 928 (1st Cir.1983)(*citing Gual Morales v. Hernandez Vega,* 579 F.2d 677, 680–81 (1st Cir.1978)); *see also Dominguez–Cruz v. Suttle Caribe, Inc.,* 202 F.3d 424, 433 (1st Cir.2000). However, "even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Ayala–Gerena v. Bristol Myers–Squibb Co.,* 95 F.3d 86, 95 (1st Cir.1996).

### B. Disparate Treatment under the ADEA

■■■■ The ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1) (2000). The ADEA protects individuals over the age of forty (40). *See Gonzalez v. El Dia, Inc.,* 304 F.3d 63, 68 (1st Cir.2002). A plaintiff may rely on direct or circumstantial evidence in making a claim of employment discrimination. *See Hidalgo v. Overseas Condado,* 120 F.3d 328, 332–33 (1st Cir. 1997). The trial court must evaluate the evidence presented as a whole in order to determine if such evidence, whether direct or circumstantial, is sufficient for a reasonable fact-finder to infer that the employer's decision was motivated by a discriminatory animus based on membership in a

protected class. *See Hidalgo,* 120 F.3d at 335 (citing *LeBlanc v. Great American Ins. Co.,* 6 F.3d 836, 843 (1st Cir.1993)).

### 1. Direct Evidence of Disparate Treatment

■■■■ A plaintiff may prove employment discrimination by using direct evidence. *See Feliciano de la Cruz v. El Conquistador Resort and Country Club,* 218 F.3d 1, 5 (1st Cir.2000). "Direct evidence is evidence which, in and of itself, shows discriminatory animus." *Jackson v. Harvard University,* 900 F.2d 464, 467 (1st Cir.1990); *Mandavilli v. Maldonado,* 38 F.Supp.2d 180, 192 (D.P.R.1999). " '[S]tray workplace remarks,' as well as statements made either by nondecisionmakers or decisionmakers not involved in the decisional process, normally are insufficient, standing alone, to establish either pretext or the requisite discriminatory animus." *Gonzalez,* 304 F.3d at 69. "It also does not include statements capable of being interpreted as both discriminatory and benign." *Rios–Jimenez v. Principi,* 520 F.3d 31, 40 (1st Cir.2008). Statements as direct evidence cannot be "inherently ambiguous" and must give a "high degree of assurance" that discrimination was the reason for the adverse employment action. *Patten v. Wal–Mart Stores East, Inc.,* 300 F.3d 21, 25 (1st Cir.2002) (citing *Fernandes v. Costa Bros. Masonry,* 199 F.3d 572, 583 (1st Cir.1999)).

■■■■ There are only three statements in the record allegedly reflecting an age motivated bias. Delanoy states in his deposition that Brett Eggleston ("Eggleston") told him that Eggleston envisioned him in a corporate role due to his knowledge, capabilities, and age. (Docket 36–2 at 121–22, 129.) Delanoy also states in his deposition that Hill called him a "dam [sic] fucking old guy." (*Id.* at 254.) Neither statement has clear support in the record

for when or in what context they were made.[1] Aerotek presents an e-mail from Hill, in which he claims that he never made any discriminatory statements to Delanoy. (*See* Docket 23–9.) Aerotek also points to Hill's deposition in which he states that on only one occasion did he hear an employee at Aerotek refer to Delanoy as "something to the effect of 'old man.'" (Docket 41–3 at 44–45.) None of the alleged statements have any clear context related to the adverse employment action claimed by plaintiff and one comes from an employee with no apparent role in decisions affecting Delanoy. (*See* Docket 362 at 121–22, 129, 254; Docket 41–3 at 44–45.) Therefore, these alleged statements can be fairly described as "stray workplace remarks" and are not indicative of the "requisite discriminatory animus." *See Gonzalez,* 304 F.3d at 69–70.

### 2. *McDonnell Douglas* Burden Shifting

■ When relying on circumstantial evidence, a plaintiff must make a *prima facie* case according to the *McDonnell Douglas* burden-shifting framework. *Id.* Thus, the employee must establish that: (1) he or she is a member of the protected class; (2) his or her job performance and/or qualifications were satisfactory and met the employer's legitimate expectations; (3) that he or she suffered an adverse employment action; and (4) that defendant continued seeking a replacement or alternate candidate "with roughly equivalent job qualifications, thus revealing a continued need for the same services and skills." *See Gonzalez,* 304 F.3d at 68; *Gu*

*v. Boston Police Dept.,* 312 F.3d 6, 11 (1st Cir.2002); *Feliciano,* 218 F.3d at 5; *Serrano–Cruz v. DFI Puerto Rico, Inc.,* 109 F.3d 23, 25 (1st Cir.1997); *Mesnick v. General Elec. Co.,* 950 F.2d 816, 823 (1st Cir.1991). When considering the fourth element of the *prima facie* case, the ADEA requires that a plaintiff be discriminated against in favor of a significantly younger individual. *See O'Connor v. Consol. Coin Caterers Corp.,* 517 U.S. 308, 313, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996); *Williams v. Raytheon Co.,* 220 F.3d 16, 20 (1st Cir.2000); *Pages–Cahue v. Iberia Lineas Aereas de Espana,* 82 F.3d 533, 536 (1st Cir.1996); *Connell v. Bank of Boston,* 924 F.2d 1169, 1173 (1st Cir.1991). The required *prima facie* showing is not especially burdensome. *See Greenberg v. Union Camp Corp.,* 48 F.3d 22, 26 (1st Cir. 1995); *Sanchez v. P.R. Oil Co.,* 37 F.3d 712, 719 (1st Cir.1994); *Smith v. Stratus Computer, Inc.,* 40 F.3d 11, 15 n. 4 (1st Cir.1994).

■ Establishing a *prima facie* case gives rise to an inference of discrimination. *Mesnick,* 950 F.2d at 823. While the burden of persuasion remains at all times with the plaintiff, the *prima facie* case shifts the burden of production to the employer, who must then articulate a legitimate non-discriminatory reason for the adverse employment action. *Id.* "This entails only a burden of production, not a burden of persuasion; the task of proving discrimination remains the claimant's at all times." *Id.* (*citing Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)); *Medina–Munoz v. R.J. Reynolds Tobacco*

---

1. If not for the piecemeal submission of deposition excerpts and citation to unsubmitted portions of said depositions by both parties, the court may have been able to glean a clearer view of the facts from the record. Local Rule 56(e) expressly states that "[t]he court may disregard any statement of fact not supported by a **specific citation to record material** properly considered on summary judgment" and "[t]he court shall have no independent duty to search or consider any part of the record **not specifically referenced in the parties' separate statement of facts.**" (emphasis added).

*Co.,* 896 F.2d 5, 9 (1st Cir.1990). If the employer meets this limited burden, the presumption created by the *prima facie* case disappears and the plaintiff "must adduce sufficient ... evidence that age was a motivating factor in the challenged employment action." *Zapata–Matos v. Reckitt & Coleman, Inc.,* 277 F.3d 40, 45 (1st Cir.2002). To do so, plaintiff must show that the employer's reason is pretextual, thus allowing the factfinder to infer "discriminatory animus" behind the challenged employment action. *Gonzalez,* 304 F.3d at 69. "It is not enough for a plaintiff to merely impugn the veracity of the employer's justification, he must 'elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive: age discrimination.'" *Mesnick,* 950 F.2d at 824 (*quoting Medina–Munoz,* 896 F.2d at 9).

▮ In the present case, Aerotek only argues that Delanoy has not established the second and fourth elements of the *prima facie* case. (Docket 24 at 2.) First, Aerotek argues that Delanoy did not meet its legitimate expectations. *Id.* at 10–15. Aerotek points to several instances in which it noted Delanoy's poor performance in the months preceding his termination, primarily revolving around Delanoy's low sales numbers. (*See* Docket 23–3 at 166–68, 350; Docket 23–8 at 6; Docket 23–6 at 2–3; Docket 23–22.) Delanoy does not contest that he was not meeting the Aerotek's sales expectations, but claims that he was not originally hired to do sales and was only required to do so through an alleged demotion.[2] (Docket 36–2 at 135–36, 175–76, 187, 335, 343–46.) He further states in his deposition that none of the

sales employees at Aerotek's Puerto Rico offices met the sales quotas set for them during the relevant time period and that he is not aware of any other employee terminated for this reason. *Id.* at 212, 271–272. Delanoy stated that the sales numbers were unrealistic because Aerotek was not placing their services at competitive rates for the area. *Id.*

Aerotek admits that no other employee met its sales quotas. (Docket 41–3 at 41–42.) Aerotek further admits that no other employee was terminated at the same time as Delanoy, but responds by presenting Hill's deposition, in which he states that Delanoy had different duties from other sales employees and missed sales quotas to a much greater degree in comparison with other sales employees. (Docket 41–2 at ¶ 19; Docket 41–3 at 31, 41–42, 47.) Given the conflicting evidence as to disparate consequences of not meeting sales quotas and whether it is indeed possible for any employee at Aerotek to meet the legitimate expectations of their employer, the court cannot determine at this point whether Delanoy has satisfied the second element of his *prima facie* case. *Cf. Curry v. Menard, Inc.,* 270 F.3d 473, 477–78 (7th Cir.2001) (finding no need to determine second element of a *prima facie* case where an employee was disciplined more harshly for a violation which other employees had committed, thus making the consideration of legitimate expectations more appropriate in pretext analysis).

Our conclusion of the second prong, however, is not dispositive of plaintiff's substantive ADEA claim. Aerotek also argues that Delanoy cannot establish the

---

**2.** Although plaintiff admits that this alleged demotion occurred outside the statutory limitations period, nothing prevents the plaintiff from offering evidence of the alleged demotion as factual background of another alleged-

ly discriminatory act. *See Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002); *Tobin v. Liberty Mut. Ins. Co.,* 553 F.3d 121, 142 (1st Cir.2009).

fourth element of the *prima facie* case because he was not replaced by a younger individual. (Docket 24 at 16.) Aerotek supports this argument with Hill's deposition, in which he states that Delanoy was never replaced as Director of Business Development. (Docket 23–5 at 41.) Hill also states, however, that Delanoy's accounts were split up and assigned to other employees. *Id.* Delanoy does not respond specifically to the replacement issue with citations to the record. With regard to other Aerotek sales employees, however, Delanoy states in his deposition that none met their sales quotas, all were younger than Delanoy, and none were terminated as a result of not meeting their sales quotas. (Docket 36–2 at 212, 271–72.) From the evidence in the record, it is not entirely clear whether Aerotek "had a continuing need for the services provided by the position from which [Delanoy] was discharged." *See Gonzalez,* 304 F.3d at 68 n. 5; *Hidalgo,* 120 F.3d at 332–33 ("A replacement need not be sought from outside the company, of course, nor need he be designated formally as such.").[3]

An analysis of whether Delanoy's duties were transferred within the company sufficient to establish that he was replaced is unnecessary, however, because Delanoy has failed to produce any evidence that he was discriminated against in favor of someone significantly younger than himself. *See O'Connor,* 517 U.S. at 313, 116 S.Ct. 1307; *Williams,* 220 F.3d at 20 (concluding that a three year age difference is not sufficient to satisfy the *prima facie* case); *Connell,* 924 F.2d at 1173. Delanoy proffers no evidence as to the ages of Hill or any of the persons Hill states took over Delanoy's accounts. Furthermore, even if

the other sales personnel referenced by Delanoy were revealed to have taken over some of Delanoy's duties, Delanoy only states in his deposition that he was the "older one" in comparison to other employees who did not meet their sales quotas. (Docket 36–2 at 271–72.) From the record, the court is unable to determine the actual age difference between Delanoy and any other Aerotek employee. Therefore, Delanoy has not provided sufficient evidence to conclude that he was discriminated against in favor of anyone significantly younger than himself and has failed to establish the fourth element of his *prima facie* case of age discrimination. *See O'Connor,* 517 U.S. at 313, 116 S.Ct. 1307; *Williams,* 220 F.3d at 20; *Connell,* 924 F.2d at 1173.

Having concluded that Delanoy has not established a *prima facie* case under the ADEA, the motion for summary judgment, (Docket 23), is hereby GRANTED with regard to Delanoy's substantive age discrimination claim. *See Mesnick,* 950 F.2d at 824.

**C. Retaliation**

After filing his initial charge before the ADU on March 22, 2006, plaintiff filed another ADU charge on June 23, 2006 alleging retaliation based on his filing of the previous ADU charge. (Docket 23–17; Docket 23–27.) The ADEA prohibits an employer from discriminating against an individual because he or she "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation" under the ADEA. 29 U.S.C. § 623(d). To establish a *prima facie* case of retaliation, a plaintiff must show that he or she: (1) engaged in pro-

---

**3.** Although the First Circuit does not require that a plaintiff be replaced in the context of a "reduction in force" to establish a *prima facie* case under the ADEA, there is no suggestion

by either party that this action presents such a context. *See Currier v. United Techs. Corp.,* 393 F.3d 246, 254 (1st Cir.2004).

tected conduct; (2) suffered an adverse employment action; and (3) that the adverse employment action was causally connected to the protected conduct. *Noviello v. City of Boston,* 398 F.3d 76, 88 (1st Cir.2005) (citing *Dressler v. Daniel,* 315 F.3d 75, 78 (1st Cir.2003)); *Ramirez Rodriguez v. Boehringer Ingelheim Pharmaceuticals, Inc.,* 425 F.3d 67, 84 (1st Cir. 2005) (citing *Mesnick,* 950 F.2d at 827). Once a plaintiff satisfies the elements of the *prima facie* case of retaliation, a burden of production falls on the employer to put forth a legitimate, nondiscriminatory reason for the adverse employment action. *Ramirez Rodriguez,* 425 F.3d at 84; *Valentin–Almeyda v. Municipality of Aguadilla,* 447 F.3d 85, 95 (1st Cir.2006). The ultimate burden of persuasion, however, remains with the plaintiff and he or she must show that the employer's nondiscriminatory reason is a pretext for retaliatory discrimination. *Id.*

 To successfully establish a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington Northern and Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)(quoting *Rochon v. Gonzales,* 438 F.3d 1211, 1219 (C.A.D.C.2006)). Retaliation claims are "not limited to discriminatory actions that affect the terms and conditions of employment." *Id.* at 64, 126 S.Ct. 2405. "The alleged retaliatory action must be material, producing a significant, not trivial, harm." *Carmona–Rivera v. Commonwealth of Puerto Rico,* 464 F.3d 14, 19 (1st Cir.2006). "'Context matters,' and 'the standard is tied to the challenged retaliatory act, not the underlying conduct that forms the basis of the [discrimination] complaint'" *Id.*

(citing *Burlington Northern,* 548 U.S. at 69–70, 126 S.Ct. 2405). The First Circuit has held that "adverse employment actions include 'demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees.'" *Marrero v. Goya of P.R., Inc.,* 304 F.3d 7, 23 (1st Cir.2002) (quoting *White v. New Hampshire Dept. of Corrections,* 221 F.3d 254, 262 (1st Cir.2000)). Whether an action is sufficient to support a claim of retaliation is judged objectively and depends on the particular circumstances of the case. *Burlington Northern,* 548 U.S. at 69, 126 S.Ct. 2405; *Marrero,* 304 F.3d at 23.

 A plaintiff must show a causal connection between his or her protected conduct and the adverse employment action. *Ramirez Rodriguez,* 425 F.3d at 84. Close temporal proximity between two events may give rise to an inference of causal connection. *See Calero–Cerezo v. U.S. Dept. of Justice,* 355 F.3d 6, 25 (1st Cir.2004). Mere temporal proximity between an employer's knowledge of protected conduct and an adverse action may establish causation if the temporal proximity is "very close." *Id. (quoting Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273–74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001)). For example, in *Calero–Cerezo v. U.S. Dept. of Justice,* 355 F.3d 6, 25–26 (1st Cir.2004), the First Circuit concluded that a one month interval was sufficient to satisfy the causal connection prong of the *prima facie* case. In determining whether causation exists, however, courts "should consider the actions taken against the employee within the overall context and sequence of events[,] the historical background of the decision, any departures from normal procedure, and contemporary statements by the employer's decision makers." *Vargas v. Puerto Rican–Ameri-*

*can Ins. Co.*, 52 F.Supp.2d 305, 313–14 (D.P.R.1999).

■ In the present case, Aerotek has conceded the first two elements of the *prima facie* case and focuses its attack on the third element, the causal connection between Delanoy's protected conduct and an adverse employment action. (Docket 24 at 27.) Delanoy's ADU retaliation charge states that "[o]n March 22, 2006, [Delanoy] filed an age discrimination charge with the [ADU]. Since [Delanoy] filed the mentioned charge [he] was subjected to more reductions in [his] duties and responsibilities. In addition, [Delanoy] was placed in a [PIP]. Finally, [Delanoy] was terminated on June 23, 2006." (Docket 23–27.) The record does reflect that subsequent to filing his initial discrimination charge, a letter dated April 26, 2006, was addressed to Delanoy indicating that he had been assigned a PIP that directed Delanoy to comply with certain performance and reporting goals within 60 days or face possible termination. (Docket 23–22.)[4] The record further reflects that Delanoy's employment was terminated on June 23, 2006. (Docket 23–3 at 398.)

The temporal proximity between Delanoy's filing of the initial ADU charge and the two alleged adverse employment actions creates a genuine issue of material fact as to a sufficient causal connection to establish a *prima facie* case of retaliation.

*See Calero–Cerezo*, 355 F.3d at 25–26. Delanoy filed his initial ADU charge on March 22, 2006. (Docket 23–17 at 1.) Delanoy was placed on the PIP approximately a month after filing his initial ADU charge alleging age discrimination. (*See* Docket 23–17 at 1; Docket 23–22.) Delanoy was subsequently terminated approximately three months after filing his initial ADU charge and approximately two months after being placed on the PIP. (*See* Docket 23–17 at 1; Docket 23–22; Docket 23–3 at 398.) The temporal proximity must also be examined in light of Delanoy's escalating informal complaints of discrimination before and after the formal filing of an ADU charge. *See Vargas*, 52 F.Supp.2d at 313–314. In a March 1, 2006 memorandum addressed to Hill, Delanoy first complained of discrimination. (Docket 23–14.) This memorandum leads to a series of e-mails between Hill and Delanoy, in which Delanoy aggressively defended his job performance and Hill denied any discrimination and attacked Delanoy's defense of his job performance. (Docket 23–19; Docket 23–20; Docket 23–21; Docket 23–23; Docket 23–24; Docket 23–25; Docket 23–26.) Given the back and forth context of Delanoy's complaints about discrimination, a reasonable fact finder could view the adverse employment actions after the filing of a formal ADU charge as responses to preclude any continuation of

---

**4.** Defendant states in the motion for summary judgment that plaintiff filed a second ADU charge "alleging that he was put on a PIP and later terminated in retaliation for having engaged in protected conduct." (Docket 24 at 26.) Defendant then states that "Aerotek does not herein contest that plaintiff can establish the first two elements of a prima facie retaliation claim." *Id.* at 27. Because defendant recognizes both adverse employment actions alleged in the second ADU charge and then concedes the second element of plaintiff's *prima facie* case, the court reads defendant's motion for summary judgment as con-

ceding, for the purposes of the present motion for summary judgment, that both alleged adverse employment actions meet the requisite "materially adverse" standard to establish the second element of plaintiff's *prima facie* case. *See Burlington Northern and Santa Fe Ry. Co.*, 548 U.S. at 68, 126 S.Ct. 2405. Therefore, the court will not enter into an extended analysis of whether the PIP is an adverse employment action for the purposes of an ADEA retaliation claim, but rather operate on defendant's concession for the purposes of deciding the motion for summary judgment.

Delanoy's complaints about discrimination. Considering the context surrounding the filing of the initial ADU charge and the temporal proximity of these two adverse employment actions in relation to Delanoy's initial ADU charge, there appears to be a genuine issue of material fact with regard to the causal connection necessary to establish a *prima facie* case of retaliation under the ADEA. *See Calero–Cerezo,* 355 F.3d at 25–26; *Vargas,* 52 F.Supp.2d at 313–14.

Furthermore, there is a genuine issue of material fact as to whether Aerotek's non-discriminatory reason for the termination of Delanoy's employment is a pretext for retaliation. Aerotek argues that placing Delanoy on the PIP and his subsequent termination were direct results of Delanoy's poor job performance, not reflections of any retaliatory animus. (Docket 24 at 16–18, 29.) *Id.* Aerotek proffers Delanoy's poor performance as its nondiscriminatory reason for discharging Delanoy. (Docket 24 at 16.) In particular, Aerotek points to Delanoy's poor performance evaluation and discussions between Hill and Delanoy regarding his alleged poor job performance, largely focusing on poor sales numbers. *Id.* Delanoy, however, argues that this nondiscriminatory reason is merely a pretext for retaliation. (Docket 34 at 7–10.) Delanoy states in his deposition that all the sales employees in Aerotek's Puerto Rico offices failed to meet their sales expectations because these expectations were unrealistic for the Puerto Rico market. (Docket 36–2 at 271–72.) Delanoy further stated that he was not aware of any of the other younger sales employees who were fired as a result of failing to meet sales expectations. *Id.* Aerotek admits that no salespersons were fired at the time of Delanoy's termination, but responds by presenting the deposition of Hill, in which he states that the sales staff did generally fail to meet their sales expectations, but did

not have the same duties as Delanoy and did not fail to meet their sales expectations in the same degree. (Docket 41–2 at ¶ 19; Docket 41–3 at 42.) Given the conflicting evidence regarding Aerotek's sales expectations, whether evaluation based on said expectations was disparate, and the genuine issues of material fact regarding Delanoy's *prima facie* case of retaliation, a rational fact finder could conclude that Aerotek took adverse employment actions as retaliation for the filing of the March 22, 2006 ADU charge.

### D. State Law Claims

Delanoy invokes the jurisdiction of this court pursuant to 28 U.S.C. § 1367 for his state law claims. Because Delanoy's federal claim of age discrimination does not survive the motion for summary judgment, summary judgment as to plaintiff's state law claim based on age discrimination pursuant to Law 100 is GRANTED and said claim is DISMISSED WITHOUT PREJUDICE. Because Delanoy's federal claim of retaliation survives the motion for summary judgment, summary judgment as to Delanoy's remaining state law claims is DENIED.

### III. CONCLUSION

For the reasons explained above, the motion for summary judgment, (Docket 23), is hereby GRANTED IN PART AND DENIED IN PART. Summary judgment is GRANTED as to plaintiff's claim of age discrimination pursuant to the ADEA, which is hereby DISMISSED WITH PREJUDICE. Summary judgment is also GRANTED as to plaintiff's claim of age discrimination pursuant to Law 100, which is hereby DISMISSED WITHOUT PREJUDICE. Summary judgment is DENIED with regard to all remaining

claims.[5]

IT IS SO ORDERED.

**5.** The Court will refrain from issuing a partial judgment at this time. The First Circuit strongly disfavors partial judgments as they foster piecemeal appeals. *See Nichols v. Cadle Co.,* 101 F.3d 1448, 1449 (1st Cir.1996) ("piecemeal appellate review invites mischief. Because the practice poses a host of potential problems we have warned, time and again, that Rule 54(b) should be used sparingly."); *Zayas–Green v. Casaine,* 906 F.2d 18, 21 (1st Cir.1990) ("This final judgment rule ... furthers 'the strong congressional policy against piecemeal review.' " *Id.* (*quoting In re Continental Investment Corp.,* 637 F.2d 1, 3 (1st Cir.1980)); *Comite Pro Rescate De La Salud v. Puerto Rico Aqueduct and Sewer Authority,* 888 F.2d 180, 183 (1st Cir.1989); *Consolidated Rail Corp. v. Fore River Ry. Co.,* 861 F.2d 322, 325 (1st Cir.1988); *Spiegel v. Trustees of Tufts Coll.,* 843 F.2d 38, 43 (1st Cir.1988); *Santa Maria v. Owens–Ill., Inc.,* 808 F.2d 848, 854 (1st Cir.1986)); *see also United States v. Nixon,* 418 U.S. 683, 690, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974).